**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Estate of Henry Joseph Darger,<br>　　　　　　Plaintiff,<br><br>　　　　　　v.<br><br>Kiyoko Lerner, individually, and as executor of<br>The Estate of Nathan Lerner, and as trustee of<br>any trust established by Nathan Lerner, and The<br>Nathan and Kiyoko Lerner Foundation,<br>　　　　　　Defendants. | Civil Action No.:<br><br>**COMPLAINT**<br>JURY TRIAL DEMANDED |

**<u>COMPLAINT</u>**

1.　　　The Estate of Henry Joseph Darger ("Plaintiff" or the "Estate") brings this action against Defendants Kiyoko Lerner ("Lerner"); The Nathan and Kiyoko Lerner Foundation ("The Foundation"), and Kiyoko Lerner in her capacity as executor of the Estate of Nathan Lerner and as trustee of any trust established by Nathan Lerner ("Estate of Nathan Lerner"); (collectively "Defendants") because of the Defendants' illicit copying, public exhibition, distribution, and commercial exploitation of the unpublished and copyrighted artwork of Henry Joseph Darger, Jr., (the "Darger Works"), deceptive trade practices, unfair competition, and Defendants' other violations of federal and state law.

2.　　　Henry Joseph Darger, Jr. ("Darger") Darger, posthumously identified as an outsider artist[1], died intestate in 1973 in Chicago, Illinois.

3.　　　As an artist, Darger was virtually unknown during his lifetime.  He left behind an extensive oeuvre of drawings, paintings, collages, and literary works.  His works are known for

---

[1] Outsider art is a form of art typically characterized as self-taught art, where the artist usually has little to no contact with the mainstream art world or institutions.

1

using a vibrancy of color and vivid composition. They routinely sell for prices exceeding $750,000, and are displayed in various museums throughout the world. Not only are his works in high demand, but there is high demand for the use of his images in books, teaching materials, commercials, and films.

4. From approximately 1930 until his death in November of 1973, Darger lived in a large third floor room at 851 West Webster in the Lincoln Park neighborhood of Chicago, Illinois. (Exhibit 1). Nathan and Kiyoko Lerner were Darger's landlords from approximately 1960 to 1973, when Darger moved to a care facility due to medical issues.

5. Upon information and belief, Lerner entered Darger's room regularly to perform maintenance. At least some of the Darger Works were proximately displayed on the walls of Darger's room, including portions of his *magnum opus In the Realms of the Unreal*. (Exhibit 1).

6. Following Darger's death, Lerner has identified, and identifies herself today, as the owner of the copyrights in the Darger Works. (Exhibit 2).

7. Nathan and Kiyoko Lerner's claim of ownership interest in the Darger Works or any alleged transfer of the associated copyrights in the Darger Works are invalid and void *ab initio*.

8. Pursuant to 17 U.S.C. § 204(a) "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."

9. Moreover, copyright interests do not transfer with the tangible and material art objects or literary objects. Any claim of ownership in the copyright interests to the Darger Works Lerner asserts is, therefore, invalid and unenforceable, as well as the alleged transfer of the tangible personal property, which is an asset of the Estate..

10. Upon information and belief, the Darger Works contain between 155 to 300 separate illustrations. Despite not having any valid rights in the copyrights to the Darger Works, or tangible personal property containing the Darger Works, Lerner, in her individual capacity, and through the Foundation, and without the Estate's consent not only took charge of the Darger Works, but registered copyrights in many of the Darger Works in her own name, in the name of Nathan Lerner and in the name of the Estate of Nathan Lerner as successor in interest to Henry Darger. (Exhibit 3)

11. Upon information and belief, shortly after Darger's death in 1973, and without the Estate's consent, Lerner separated bound volumes of the Darger Works and began selling them for profit.

12. Upon information and belief, since Darger's death, Lerner, both individually and through The Nathan and Kiyoko Lerner Foundation, and the Estate of Nathan Lerner have entered into numerous licensing arrangements with third parties for the purpose of exploiting the copyrights in the Darger Works without the Estate's consent.

13. Upon information and belief, the Estate of Nathan Lerner, and Lerner both individually, and through The Foundation licensed the Darger Works, or otherwise commercially exploited them for, without limitation, display in museums and galleries, and for use in films, advertisements, and for merchandising schemes.

14. Upon information and belief, the Estate of Nathan Lerner, Lerner and The Foundation have generated tens of hundreds of millions of dollars from the unauthorized exploitation of the Darger Works, including, but not limited to the display, copying, exhibition, distribution and publishing of the Darger Works and the Estate's tangible personal property containing the Darger Works.

3

15.     Through their misconduct, Defendants continue to reap immense financial profit and benefit from the Darger Works.

## I. THE PARTIES

16.     Christen Sadowski is the supervised administrator of the Estate pursuant to the Letter of Office issued by the Circuit Court of Cook County, Probate Division on June 2, 2022, Court File No. 2022P000164. (Exhibit 4). Sadowski is authorized to take possession of and collect the assets of the Estate, including its copyright and personal property interests.

17.     Upon information and belief, The Foundation is an Illinois trust established in 1972, with a principal place of business at 500 W Superior St #2401, Chicago, IL 60654.

18.     Kiyoko Lerner is an individual who, upon information and belief, resides at 500 W Superior St #2401, Chicago, IL 60654. She is a well-known pianist active in the art world.

19.     Upon information and belief, Lerner is the sole trustee of The Foundation.

20.     Upon information and belief, the Estate of Nathan Lerner is an Illinois estate established in 1997, and Kiyoko Lerner is the executor. Upon information and belief, Kiyoko Lerner is also a trustee of any trust established by Nathan Lerner.

## II. STATUTORY BASIS AND NATURE OF ACTION

21.     This action is for: (1) copyright infringement under the Copyright Act, 17 U.S.C. §§ 101, *et seq*.; (2) unfair competition and false designation of origin, or false or misleading description or representation of fact under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201; (4) Anticybersquatting, 15 U.S.C. § 1125(d); (5) unfair competition under Illinois common law; ; (6) deceptive trade practices under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS §§

4

510/1-510/7; (67) unjust enrichment under Illinois common law; (8) an equitable easement; and (9) conversion under Illinois law.

22.     The Estate seeks preliminary and permanent injunctive relief, an accounting and award of profits, statutory damages, and a declaratory judgment that the Estate owns copyrights in and to the Works, among other remedies.

## III.  JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction to hear and determine this controversy pursuant to 28 U.S.C. §§ 1331 and 1338 because the action arises under the federal Copyright Act and Lanham Act.  *See* 17 U.S.C. §§ 101, *et seq*.; 15 U.S.C. § 1121, *et seq*.  This Court also has jurisdiction under the Declaratory Judgment Act, 38 U.S.C. § 2201.

24.     This Court has supplemental jurisdiction to hear and determine the state law claims, which arise under the statutory and common laws of the State of Illinois, pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution, and derive from a common nucleus of operative facts.

25.     Venue and personal jurisdiction are proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to the claims herein occurred in this District.  The Darger Works were created in this District and Defendants have distributed, displayed, licensed, and collected revenue from their unauthorized commercial exploitation of the Darger Works in this District.

26.     This Court has personal jurisdiction over Defendants because Defendants have continuous and systematic contacts with the state of Illinois, because they have purposefully directed their activities toward the state of Illinois, caused, and are causing, harm suffered in the

state of Illinois, and because this action is based upon activities that arise out of or relate to those contacts.

## IV. FACTUAL BACKGROUND

### A. Henry Joseph Darger, Jr.

27.    Darger was born on April 12, 1892 in Chicago, Illinois and died in Chicago on April 13, 1973.  Darger had a difficult childhood.  At the age of four Darger's mother died after giving birth to his sister.  His sister was given up for adoption.

28.    Darger lived with his father until 1900, when his father became disabled and was taken to St. Augustine's Home for the Aged.  Darger was taken to the Mission of Our Lady of Mercy Catholic Orphanage.  Darger's father died in 1905.  Thereafter, Darger was institutionalized in the Illinois Asylum for Feeble-Minded Children in Lincoln, Illinois.

29.    Darger escaped from the asylum in 1908 when he was 16 years old, and returned to Chicago.  In Chicago, Darger held menial jobs as a janitor or dishwasher in several city hospitals.

30.    From approximately 1930 until his death in 1973, Darger rented a large third floor room at 851 West Webster in the Lincoln Park neighborhood of Chicago.  From approximately 1960 until his death in 1972, Darger's landlords at 851 W. Webster were Nathan and Kiyoko Lerner.

### B. Darger's Works

The Darger Works include but are not limited to the following:

### I. *In the Realms of the Unreal*

31.    *In the Realms of the Unreal* is Darger's most famous work.  It is a 15,000-page epic story based loosely on the events of the American Civil War, pitting children against abusive adults.  The work includes approximately 300 watercolors, pastel washes, pencil drawings, and

collages. Darger rendered his human figures by tracing collages or photo enlargements from magazines, newspapers, or books.

32.     His work is universally praised for its composition and use of color. In 2018, Christie's estimated the sale price for <u>one page</u> from *In the Realms of the Unreal* to be between $200,000 to $400,000. The actual sales price was $675,000. (Exhibit 5)

**II.     *The Story of the Vivian Girls, in What Is Known as the Realms of the Unreal, of the Glandeco-Angelinnian War Storm***

33.     *The Story of the Vivian Girls, in What Is Known as the Realms of the Unreal, of the Glandeco-Angelinnian War Storm* follows seven child princesses known as the Vivian Girls who take part in a rebellion against child slavery imposed by their adult overlords.

**III.     *Crazy House: Further Adventures in Chicago***

34.     *Crazy House: Further Adventures in Chicago* is a work of fiction containing over 10,000 handwritten pages. Darger wrote it after *In the Realms of the Unreal*. It takes characters from *In the Realms of the Unreal* and places them in Chicago.

**IV.     *The History of My Life***

35.     *The History of My Life* chronicles Darger's frustrations with his childhood and his experience dealing with a natural disaster. The work spans eight volumes.

36.     Under Illinois law and under the Copyright Act, 17 U.S.C. § 201(d)(1), the Estate own the copyright in works of authorship created by Darger.

37.     As the owner of the above-listed Darger Works and pursuant to Section 106 of the Copyright Act, the Estate has the exclusive right to reproduce the Darger Works, prepare derivative works, distribute copies to the public, and display the Darger Works publicly.

**C.  Defendants, the Estate of Nathan Lerner, Lerner, and the Foundation**

38.     Upon information and belief, the Foundation is a business entity that profits from commercially exploiting the Darger Works with Lerner as the owner and sole member of the Foundation.

39.     Upon information and belief, Kiyoko Lerner is the executor of the Estate of Nathan Lerner; and upon information and belief, Kiyoko Lerner is the trustee of any trust established by Nathan Lerner.

40.     The Estate of Nathan Lerner holds itself out as the successor-in-interest of Henry Darger.  (Exhibit 3).

41.     Upon information and belief, the Estate of Nathan Lerner, and The Foundation, at the direction of Lerner, license the Darger Works and enter into contracts for the display and exhibit of the Darger Works as well as the sale of the Estate's tangible personal property containing the Darger Works.

42.     Upon information and belief, the Estate of Nathan Lerner, Lerner and the Foundation entered into agreements with a number of museums, institutions and companies to display, exhibit, reproduce and otherwise commercially exploit the Darger Works.  These include, but are not limited to, the American Folk Art Museum, and The Center For Intuitive and Outsider Art.

43.     Upon information and belief, the Estate of Nathan Lerner, and Lerner have represented, and currently represent, themselves to third parties to be the representatives and owners of all the Darger Works and associated intellectual property, including but not limited to, the copyright registrations identified in Exhibit 3, along with the Estate's tangible personal property containing the works.

**D.     Defendants' Infringing Conduct**

44.     Beginning in 1973, Lerner took total control of the Darger Works under the false pretense that Darger had gifted her and Nathan Lerner both the physical copies of the Darger Works and the underlying copyright and intellectual property embodied in the Darger Works.

45.     Upon information and belief, shortly after Darger's death in 1973, Lerner separated bound volumes of the Darger Works and began selling them for profit.

46.     Upon information and belief, the Estate of Nathan Lerner, Lerner and the Foundation have donated, loaned, or sold portions of the Darger Works falsely acting as representatives of the "Henry Darger Estate" — or acting on behalf of the "Estate of the Artist" — to at least, The Museum of American Folk Art, The Center For Intuitive and Outsider Art, and the Carl Hammer Gallery, as well as various other museums, galleries and institutions.

47.     Upon information and belief, the Estate of Nathan Lerner, Lerner, and the Foundation have entered into agreements without the Estates consent for the display, exhibition, sale, reproduction, and distribution of the Darger Works with various individuals, museums, galleries and institutions.

48.     Upon information and belief, these include, but are not limited to, the Artists Rights Society, Straus and Giroux, the University of Iowa Stanley Museum of Art, Galerie St. Etienne, and Rizzoli International Publications, the Musee D'Art Moderne De La Ville De Paris, and The Museum of American Folk Art

49.     Beginning in 1995 or 1997, Lerner, and the Estate of Nathan Lerner began applying for, and securing United States Copyright Registrations for a number of the Darger Works falsely listing themselves as the Claimants (i.e., the owners) of the Darger Works.  The works and associated Registration Numbers are detailed below.

| Title of Work | Registration No. | Copyright Claimant |
| --- | --- | --- |

| History of My Life | TXu000810328 | Kiyoko Lerner |
|---|---|---|
| In The Realms of The Unreal | TXu000810471 | Kiyoko Lerner |
| Life Stories of Henry Darger | V3501D108 | Kiyoko Lerner, individually, and for the Estate of Nathan Lerner and Lerner & as successor-in-interest of Henry Darger<br><br>Down Under Communications, Inc. & Michael Besman |
| The Story of the Vivian Girls in What is Known as the Realms of the Unreal | VAu000343496 | Former: Nathan Lerner Current: Kiyoko Lerner |
| Recollections of Henry Darger | TXu000810222 | Kiyoko Lerner |
| Story of the Vivian Girls in What is Known as the Realms of the Unreal | VAu 343-496 | Kiyoko Lerner |

50.     Attached as Exhibit 3 are true and correct copies of printouts from the Copyright

Offices evidencing the certificates of registration for the Darger Works identified above.

51.     At no point in time did the Estate authorize the Estate of Nathan Lerner, or Lerner to file copyright registrations in and to the Darger Works in her own name or otherwise.

52.     Upon information and belief, the Estate of Nathan Lerner, Lerner, and the Foundation continue to falsely hold themselves out as the valid copyright holders to the Darger Works and as representatives of the "Estate of the Artist" or the "Darger Estate," solely for the purpose of commercially exploiting the Darger Works without the authorization or permission of the Estate and to the Estate's detriment.

53.     Upon information and belief, the Estate of Nathan Lerner, Lerner, and the Foundation, without the Estate's consent, continue to willfully distribute, provide, market, advertise, promote, copy, exhibit, reproduce, and offer for sale, convert and infringe upon the Darger Works.

54.     Defendants, upon information and belief, willfully appropriated Darger's name and likeness in multiple ways including, without limitation, by using Darger's name and likeness in connection with the unauthorized exploitation of the Darger Works, and using the HENRY DARGER mark and name in connection with the domain name "officialhenrydarger.com."

55.     The Estate did not authorize Defendants to use the HENRY DARGER mark, Darger's name, identity, or likeness, and neither the Estate of Nathan Lerner, Lerner nor the Foundation had consent to do so.

56.     Upon information and belief, the Estate of Nathan Lerner, Lerner and the Foundation's utilization of the HENRY DARGER mark, Darger's name, identity, and likeness, was purely for commercial purposes including, without limitation, to offer for sale and promote the Darger Works and intellectual property.

57.     Upon information and belief, Defendants' have received and continue to receive a benefit from their utilization of the HENRY DARGER mark, Darger's name, identity, likeness, and reputation.

58.     Defendants' infringing acts as alleged above have caused and are likely to continue to cause confusion, mistake, and deception among the relevant consuming public as to the affiliation, source, or origin of the Darger Works, and have and are likely to continue to deceive the relevant consuming public into believing, mistakenly, that the Darger Works are associated with, originate from, or are affiliated with, Defendants, or that the sale, licensing, and commercial exploitation of the Darger Works by the Defendants is otherwise authorized by the Estate.

59.     Upon information and belief, Defendants' acts are willful with the deliberate intent to cause confusion and deception in the marketplace, and deprive the Estate of control of the Darger Works, and tangible personal property, and associated revenue that is rightfully the Estate's.

60.     Defendants' acts are causing, and unless restrained, will continue to cause, damage and immediate irreparable harm to the Estate for which the Estate has no adequate remedy at law.

## COUNT I
## DECLARATORY JUDGMENT OF COPYRIGHT OWNERSHIP

61.     The Estate realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

62.     Pursuant to Illinois law and the Copyright Act, 17 U.S.C § 201(d)(1), the Estate is the valid copyright holder in all works authored by Darger during his lifetime, as well as any derivative works, including the works which are the subject of Copyright Registration Nos. TXu000810328, Txu000810471, VAu343-496, VAu000343496, TXu000810222, and V3501D108 identified in Exhibit 3.

12

63.     Neither Henry Darger, or the Estate ever executed a written agreement transferring any copyrights or rights under copyright to any of the Defendants.

64.     Consequently, any purported conveyance of Darger's ownership in the copyrights in the Darger Works is unenforceable and void ab initio under 17 U.S.C. § 204(a).

65.     The Estate requests that the Court enter a declaratory judgment that:

a.      the Estate is the sole and exclusive owner of the copyrights in the Darger Works;

b.      that neither the Estate of Nathan Lerner, The Foundation or Lerner are the owners of, or copyright claimants to, the Darger Works;

c.      that neither the Estate of Nathan Lerner, The Foundation or Lerner have any ownership interest in the copyright for the Darger Works.

## COUNT II
## COPYRIGHT INFRINGEMENT

66.     The Estate realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

67.     Darger is the author of each of the Darger Works, including the works which are the subject of Copyright Registration nos. TXu000810328, Txu000810471, VAu343-496, VAu000343496, TXu000810222, and V3501D108 identified in Exhibit 3.

68.     Each of the Darger Works contain copyrightable subject matter under the laws of the United States.

69.     Pursuant to Illinois law and the Copyright Act, 17 U.S.C § 201(d)(1), the Estate is the valid copyright owner of all works authored by Darger during his lifetime, including the works subject to the copyright registrations identified in Exhibit 3.

70. Defendants had access to the Darger Works, including those works identified in Exhibit 3.

71. After accessing the Darger Works, including those works identified in Exhibit 3, Defendants wrongfully created unauthorized, identical copies of the Darger Works and engaged in widespread infringement through their acts, including but not limited to, the distribution, display, and exhibition of the Darger Works and the creation and sale of prints or by authorizing others to do the same.

72. The Estate is informed and believes, and therefore alleges, that Defendants further infringed the copyrights by making, or causing to be made derivative works of, and from the Darger Works by producing and distributing reproductions without the Estate's permission.

73. Defendants' acts of copyright infringement have caused and will continue to cause damage to the Estate, in an amount to be proven at trial.

74. The Estate is entitled to, among other relief, injunctive relief, an award of actual damages, Defendants' profits, statutory damages and profits, reasonable attorneys' fees, and costs of the action, together with prejudgment and post-judgment interest.

## COUNT III
## EQUITABLE EASEMENT

75. The Estate realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

76. Upon information and belief, the only known copies of many of the Darger Works are currently in the possession of Defendants.

77. The copyrights to these works, including the right to reproduce, distribute, publicly exhibit, and license these works, belongs solely to the Estate.

78.     Without access to the physical objects in Defendants' possession, the Estate is deprived of all ability to control and exercise its valid copyrights in the works embodied therein.

79.     The Estate requests that the Court grant the Estate an equitable easement against the physical objects embodying the copyrights in Darger Works in the Defendants' possession custody or control in order to:

a.      Digitize and/or take other steps to create an alternative master copy of the works authored by Henry Darger which are currently possessed or owned by Defendants; and

b.      Declare that the digitized copy and/or alternative master copy, along with all subsequent copies created by the Estate are the sole property of the Estate;

c.      Act in accordance with applicable law regarding copyright registration filings or amendments thereto.

## COUNT IV
## FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION

80.     The Estate realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

81.     The HENRY DARGER mark and name is a protectable mark identifying the source or origin of the Darger Works as Henry Darger and the Estate.

82.     The Estate has a protectable interest in the HENRY DARGER mark and name.

83.     Defendants' unauthorized use in commerce of Darger's name and the HENRY DARGER mark as alleged above, including Defendants' use of the "officialhenrydarger.com" domain name, is likely to confuse, cause mistake, or deceive consumers as to the origin, source, sponsorship, or affiliation of its services, and is likely to cause consumers to believe, contrary to

fact, that Defendants' services are sold, authorized, endorsed, or sponsored by the Estate or that Defendants are in some way affiliated with or sponsored by the Estate.

84.     Defendants' unauthorized use in commerce of Darger's name and the HENRY DARGER mark as alleged above constitutes use of a false designation of origin and a misleading description and representation of fact in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

85.     Upon information and belief, Defendants' conduct as alleged above is willful and is intended to, and is likely to, cause confusion, mistake, or deception as to the affiliation, connection, or association of the Defendants with the Estate.

86.     The conduct of the Defendants as alleged above constitutes unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

87.     Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to the Estate, and its goodwill and reputation, and will continue to both damage the Estate and confuse the public unless enjoined by this Court.  The Estate has no adequate remedy at law.

88.     The Estate is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT V
## COMMON LAW UNFAIR COMPETITION

89.     The Estate realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

90. Defendants have engaged in unfair competition through their reliance on and exploitation of consumer mistake and confusion, and their deliberate efforts to exploit the goodwill represented by Darger's name.

91. Upon information and belief, Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with the Estate.

92. By reason of their acts, Defendants have committed unfair competition under Illinois common law.

93. Defendants' conduct is causing immediate and irreparable harm and injury to the Estate, and its goodwill and reputation, and will continue to both damage the Estate and confuse the public unless enjoined by this Court. The Estate has no adequate remedy at law.

94. The Estate is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Illinois common law, together with prejudgment and post-judgment interest.

**COUNT VI**
**VIOLATION OF THE ILLINOIS**
**UNIFORM DECEPTIVE TRADE PRACTICES ACT**

95. The Estate realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

96. The Illinois Uniform Deceptive Practices Act ("UDPA"), 815 ILCS § 510/2, *et seq*. provides that a person engages in deceptive trade practices when the person "(1) passes off goods or services as those of another . . . (3) causes a likelihood of confusion or of misunderstanding as to affiliation, connection or association with or certification by another. . . [or] (5) represents that goods or services has sponsorship, approval, characteristics. . . that they do not have."

97.     The Defendants have violated the UDPA by falsely and deceptively representing to consumers that they are associated with the Estate and Darger, and because the Defendants have used deception, fraud, false pretense, misrepresentation or concealment, suppression or omission of material facts, either expressly or by implication, in causing the false association with the intent that the public rely upon those false representations.

98.     Defendants' trade practice of misleadingly holding themselves out as being associated with the Estate and Darger is directed to the market generally, and otherwise constitutes a consumer protection matter because consumers need to be protected from false and misleading advertising of the type that the Defendants are engaged in.

99.     The unauthorized use by Defendants of the Darger Works and the HENRY DARGER mark is causing and is likely to cause substantial injury to the public and to the Estate, and the Estate has no adequate remedy at law for this injury.

100.    As a result of Defendants' unlawful business practices, the Estate is entitled to an order enjoining such future conduct, attorneys' fees under 815 ILCS § 510/3, and such other orders and judgments necessary.

## COUNT VII
## UNJUST ENRICHMENT

101.    The Estate realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

102.    The Estate's ownership of the rights to distribute and the rights to license the use of the copyrights in and to the Darger Works are valuable assets to the Estate.

103.    By reproducing, distributing, and selling the Darger Works, and tangible personal property without the Estate's permission or authorization, and profiting off the Darger Works

18

without paying compensation to the Estate, Defendants have misappropriated a valuable asset belonging to the Estate.

104.     By failing to pay proper compensation to the Estate for the sale and use of the Darger Works, including the tangible personal property upon which they reside,, Defendants have retained the Estate's benefit, and such retention violates the fundamental principles of justice, equity and good conscience.

## COUNT VIII
## ANTICYBERSQUATTING

105.     The Estate realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

106.     Defendants have registered, trafficked in, and are using a domain name, "officialhenrydarger.com," that includes and is virtually identical to the Estate's mark HENRY DARGER.  Defendants' domain name encompasses the HENRY DARGER mark, name and identity in its entirety along with the misnomer "official."

107.     The HENRY DARGER mark name and identity were distinctive and known to Defendants at the time they registered and/or acquired the "officialhenrydarger.com" domain name.

108.     Defendants had and continue to have a bad faith intent to profit from the "officialhenrydarger.com" domain name.

109.     Defendants have no valid trademark rights in the HENRY DARGER name and mark or any other mark incorporating or comprising the name "Henry Darger."

110.     Defendants have used the domain name to cause confusion and to exploit the goodwill of the Estate's HENRY DARGER mark for Defendants' commercial gain.

111.     Defendants' acts constitute cybersquatting in violation of 15 U.S.C § 1125(d).

112.     As a result of Defendants' cybersquatting, the Estate has suffered detriment to its goodwill, business, reputation and profits – all of its damages in an amount yet to be determined, and subject to a treble damages award pursuant to 15 U.S.C. § 1117.

113.     Alternatively, upon information and belief, the Estate believes that the Defendants have derived and will continue to derive unlawful gains and profits as a result of their unlawful acts.  Alternatively, the Estate is entitled to recover statutory damages.

114.     This case is an exceptional case and the Estate is entitled to recover its attorneys' fees pursuant to 15 U.S.C. § 1117.

115.     The Estate is entitled to a transfer of the "officialhenrydarger.com" domain name.

116.     If Defendant's are permitted to continue the foregoing acts, the Estate will sustain further loss and damage and irreparable injury, for which the Estate has no adequate remedy at law.  Injunctive relief against Defendants continued conduct should be granted pursuant to this Court's authority under 15 U.S.C. §§ 1116 and 1118.

### COUNT IX
### CONVERSION

117.     The Estate realleges and incorporates each and every allegation in the paragraphs above as if they were fully set forth herein.

118.     The Estate has rights in the Darger Works, including an absolute and unconditional right to possess all original versions of the drawings and manuscripts of those works, and any tangible personal property consisting of or comprising the Darger Works.

119.     When Darger passed away, his personal property, including but not limited to any tangible personal property consisting of or comprising the Darger Works became that of the Estate. The Estate thus had the exclusive right to control all of Darger's personal effects.

120. Defendants took the Darger Works, and tangible personal property containing the Darger Works, from Darger's former home without the Estate's authorization.

121. By withholding this property from the Estate, Defendants unlawfully exercised control, dominion, and ownership over the Estate's property.

122. The Estate has demanded the return of the property from Defendants. (Exhibit 6)

123. Defendants refuse to provide for the return of the property or justify its unlawful possession of it.

124. Because of Defendants' unlawful conversion, Plaintiff has suffered damages in an amount to be determined at trial.

## REQUEST FOR RELIEF

WHEREFORE, the Estate respectfully requests that this Court:

A. Enter judgment in its favor on Counts I-X;

B. Enter a declaratory judgment that the Estate is the sole and exclusive owner of the copyrights in the Darger Works;

C. Enter a declaratory judgement that neither the Estate of Nathan Lerner, The Foundation nor Lerner are the owners of, or copyright claimants to, the Darger Works;

D. Enter a declaratory judgement that neither the Estate of Nathan Lerner, The Foundation nor Lerner have any ownership interest in the copyright for the Darger Works.

E. Enter a declaratory judgment that the Estate is the sole and exclusive owner of the tangible personal property left by Darger, including the tangible property containing the Darger Works;

F. Order the Defendants to return the Darger Works and the tangible personal property, including the tangible property containing the Darger Works, to the Estate.

G.      Award the Estate its actual damages against Defendants in an amount to be determined at trial;

H.      Award the Estate the Defendants' profits from its aforementioned activities;

I.      Award the Estate punitive damages against Defendants;

J.      Award the Estate statutory damages;

K.      Award the Estate all of its costs and reasonable attorneys' fees in this action as authorized by 17 U.S.C. § 1203, 765 ILCS § 1075/55, 815 ILCS § 510/3 and other applicable laws;

L.      Award the Estate pre-judgment and post-judgment interest at the maximum legal rate and costs;

M.      Award the Estate an accounting for damages and for all the profits together with those profits lost by the Estate due to Defendants' misconduct alleged herein;

N.      Preliminarily and permanently enjoin Defendants, and their predecessors, successors, divisions, subsidiaries, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all officers, directors, employees, agents, attorneys, representatives, those acting in privity or concert with them, or on their behalf, from:

   i.      Displaying, copying, distributing, promoting, offering, disseminating, or selling the Darger Works, and any copyrighted materials or any modification, derivation, or reproduction thereof;

   ii.     Representing that Defendants have any rights to the Estate's copyrights, including ownership, license, or any other right;

   iii.    Using Darger's identity and name without prior authorization; and

   iv.     Doing and engaging in any of the acts described above and directing Defendants to conform with each and every provision of this prayer for relief;

22

O.      Direct Defendants to provide an accounting of all products ever sold consisting of or incorporating the Darger Works;

P.      Direct Defendants to provide an accounting of all Darger Works in their possession or control;

Q.      Direct Defendants to provide an accounting of all Darger Works ever sold;

R.      Declare the Estate the owner of all of the tangible personal property left by Darger,

S.      Direct Defendants to provde for an accounting for any tangible property left by Darger, including any tangible personal property consisting of or comprising Darger Works, or in the alternative, voiding any such sales, and Directing Defendants to return any remaining personal property; and

T.      Grant to the Estate such other relief as may be just and warranted under the circumstances.

**JURY DEMAND**

The Estate hereby demands a jury trial on all issues so triable.


Dated:  July 27, 2022                          Respectfully submitted,

                                                  ESTATE OF HENRY JOSEPH DARGER,


                                                  By:     */s/Marcus S. Harris*

                                                  Marcus S. Harris
                                                  TAFT STETTINIUS & HOLLISTER LLP
                                                  111 E. Wacker Drive, 28th Floor
                                                  Chicago, Illinois 60601
                                                  Phone: (312) 840-4320
                                                  Fax: (312) 966-8599

                                                  mharris@taftlaw.com