# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| ESTATE OF HENRY JOSEPH DARGER, | |
| Plaintiff, | No. 22 C 03911 |
| v. | Judge Thomas M. Durkin |
| KIYOKO LERNER, INDIVIDUALLY, AND AS EXECUTOR OF THE ESTATE OF NATHAN LERNER, AND AS TRUSTEE OF ANY TRUST ESTABLISHED BY NATHAN LERNER, AND THE NATHAN AND KIYOKO LERNER FOUNDATION, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Henry Joseph Darger ("Darger") was an artist who died in obscurity but whose work received significant posthumous acclaim. In this case, his estate ("the Estate") is seeking to claim copyrights in Darger's work that the Estate alleges were wrongfully claimed for nearly 50 years by Darger's landlords, Nathan and Kiyoko Lerner. Since Darger's death, the Lerners have claimed ownership of the copyrights associated with Darger's works and marketed and sold them. The Estate, now represented by one of Darger's relatives, sues Kiyoko Lerner and various entities associated with her[1] (collectively, "Defendants") for copyright, trademark, unfair competition, and deceptive trade practices violations, as well as various common law

---

[1] Upon Nathan Lerner's death, Kiyoko Lerner became the executor of his estate and the trustee of any trust established by him. *Id.* ¶ 39. The Nathan and Kiyoko Lerner Foundation, a business entity that has Kiyoko as its owner and sole member, makes profits from selling Darger's works. *Id.* ¶ 38.

claims. The Estate also seeks a declaratory judgment that it is the rightful owner of the copyrights in Darger's works and an equitable easement for access to the physical works. Defendants move to dismiss the Complaint on the basis that it fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). R. 18. For the following reasons, that motion is denied.

## Legal Standard

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard,

the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Background

Henry Joseph Darger, born in 1892, had a difficult childhood. R. 1 ¶ 27. When he was four years old, his mother died while giving birth to his sister, who was then given up for adoption. *Id.* He continued to live with his father until he was eight years old, when he was taken to an orphanage because his father became disabled and was committed to an institution. *Id.* ¶ 28. After his father's death in 1905, Darger was himself institutionalized in the Illinois Asylum for Feeble-Minded Children. *Id.* ¶ 28. He escaped from the asylum in 1908 when he was 16 years old. *Id.* ¶ 29. From that time on, he lived alone in Chicago and held various "menial" jobs, such as janitor and dishwasher. *Id.* From approximately 1930 until 1973, when he moved to a care facility and shortly thereafter passed away, Darger lived in a room at 851 West Webster in Chicago's Lincoln Park neighborhood. *Id.* ¶ 30. Darger's landlords from approximately 1960 to the end of his life in 1973 were Nathan and Kiyoko Lerner. *Id.*

Unbeknownst to the outside world, Darger was a prolific author and artist. *Id.* ¶ 2. When he died intestate, he left behind in his apartment a 15,000-page epic fantasy novel called *In the Realms of the Unreal*, about a civil war between children and abusive adults, which included approximately 300 pages of watercolor, pastel wash, pencil, and collage illustrations. *Id.* He also wrote other expansive works, including *The Story of the Vivian Girls, in What Is Known as the Realms of the Unreal, of the Glandeco-Angelinnian War Storm*, *Crazy House: Further Adventures in*

*Chicago*, and a memoir called *The History of My Life*.[2] Darger's works posthumously became well-regarded in the genre of "outsider art" (art by self-taught artists who have no contact with the mainstream). *Id.* ¶¶ 2, 10. "His works are known for using a vibrancy of color and vivid composition." *Id.* ¶ 3. Today, a single illustration from *In the Realms of the Unreal* regularly sells for $200,000 to $400,000 and has been known to fetch as much as $750,000. *Id.* ¶¶ 3, 32. His illustrations have also been featured in books, teaching materials, commercials, films, and museums around the world. *Id.* ¶ 32.

During Darger's life, the Lerners regularly entered Darger's room to perform maintenance and saw Darger's works displayed on the walls. *Id.* ¶ 5. Upon Darger's death, the Lerners took control of his works under the allegedly false pretense that he had gifted the physical copies of his works and their associated copyrights to them. *Id.* ¶ 44. The Lerners then separated bound volumes of his works and began selling them for profit. *Id.* ¶¶ 11, 45. While supposedly wrongfully purporting to be representatives of the "Henry Darger Estate,"[3] Defendants have donated, loaned, sold, exhibited, reproduced, and distributed portions of Darger's works to the Museum of American Folk Art, the Center for Intuitive and Outsider Art, the Artist's Rights Society, Straus and Giroux, the University of Iowa Stanley Museum of Art, Galerie St. Etienne, Rizzoli International Publications, the Musee D'Art Moderne De

---

[2] Throughout this Opinion, the whole of Darger's novels and illustrations are referred to as "Darger's works" or "his works."

[3] The Estate of Nathan Lerner holds itself out as the successor-in-interest of Henry Darger. *Id.* ¶ 40.

4

La Ville De Paris, and the Carl Hammer Gallery. *Id.* ¶ 46–48. Around 1995, Kiyoko Lerner and the Nathan Lerner Estate began applying for United States Copyright Registrations for Darger's works by "falsely listing themselves as the Claimants" of his works. *Id.* ¶ 49. Defendants also use Darger's name, identity, and likeness to "exploit" his works and by registering the domain name "officialhenrydarger.com." *Id.* ¶¶ 54–56.

In June 2022, the Circuit Court of Cook County, Probate Division, approved Christen Sadowski, a distant relative of Darger, to be the administrator of the Estate and to take possession of and collect the assets of the Estate. *Id.* ¶ 16. The Estate now sues Defendants, alleging that the Lerners' claims of ownership in Darger's copyrights are invalid because they are based on the false pretense that Darger gifted his works to them. The Complaint also asserts that copyright interests do not automatically transfer with tangible objects, and there was no written instrument transferring copyright ownership to the Lerners. *Id.* ¶¶ 7–9, 16. Therefore, according to the Estate, Defendants have been wrongfully reaping financial profit in the tens of millions of dollars from Darger's works without the Estate's authorization and permission. *Id.* ¶¶ 14, 15.

The Complaint asserts actions for a declaratory judgment of copyright ownership (Count I) and copyright infringement (Count II) under the Copyright Act; equitable easement (Count III); unfair competition and false designation of origin (Count IV) and cybersquatting (Count VIII) under the Lanham Act; common law unfair competition (Count V); deceptive trade practices under the Illinois Uniform

Deceptive Trade Practices Act ("IUDTPA") (Count VI); and common law unjust enrichment (Count VII) and conversion (Count IX). Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6). R. 18. In their reply brief, Defendants also move to strike the portions of the Estate's brief in opposition that include facts and documents not referenced in the Complaint, or in the alternative, request leave to respond with their own evidence. R. 24 at 2–4.

## Discussion

### I. Motion to Strike

Before reaching the merits of the parties' arguments, the Court must address Defendants' motion to strike, which requests that the Court disregard the extraneous facts and documents that the Estate discussed in and attached to its brief in opposition to the motion to dismiss. Specifically, the Estate included in its response brief numerous facts and documents not referenced in the Complaint that are apparently included to show that there may exist facts that would defeat Defendants' timeliness defense (discussed below). The Court could properly consider them for that purpose without converting Defendants' motion to dismiss to one for summary judgment. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 (7th Cir. 2012) ("In the district court . . . a party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove.") (citing *Thomas v. Guardsmark*, 381 F.3d 701, 704 (7th Cir. 2004) (denying motion to strike extraneous documents submitted by the plaintiff to rebut the defendant's argument that the claims were time-barred)). Nevertheless, Defendants' motion to

strike is denied as moot because, even disregarding the extraneous documents attached to the Estate's brief for the sake of argument, Defendants cannot prevail on their motion to dismiss.

## II.    Timeliness

Defendants primarily argue that the entirety of the Complaint should be dismissed because Darger died nearly 50 years ago and the claims against them are time-barred under the doctrine of laches and the applicable statutes of limitations. R. 1, ¶¶ 2, 4, 27, 30. Laches and noncompliance with the statute of limitations, however, are both affirmative defenses. *United States v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004) ("Dismissal under Rule 12(b)(6) [is] irregular, for the statute of limitations is an affirmative defense."). "[C]omplaints need not anticipate and attempt to plead around defenses," *id.*, so a motion to dismiss based on laches or a failure to comply with the statute of limitations should be granted only where the plaintiff pleads itself out of court, or where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). "As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitation based on a more complete factual record." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015).

7

Laches, an equitable doctrine, arises when an unwarranted delay in bringing suit causes prejudice to the defendant. *See, e.g.*, *Oliver v. United States*, 961 F.2d 1339, 1342–43 (7th Cir. 1992) (petitioner's 17-year delay in bringing § 2255 petition prejudiced the government's ability to respond to the merits because of destruction of records after ten years). Defendants argue that the prejudice they face after nearly 50 years is "substantial," but do not discuss why that is the case. They further argue that the Estate's delay was unwarranted because Darger's art has been well-regarded for years and therefore his relatives should have known about him. Defendants' laches defense is a factual inquiry that is not appropriate to a motion to dismiss. *See Champion Labs., Inc. v. Cent. Ill. Mfg. Co.*, 157 F. Supp. 3d 759, 765 (N.D. Ill. 2016). But it also fails for a more fundamental reason: Defendants admit the equitable doctrine of laches is not an available defense in cases which are governed by statutes which contain a limitations period, such as the Copyright Act. 17 U.S.C. § 507(b) (three-year limitations period for civil copyright infringement actions); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 678–79 (2014) (laches defense not available in copyright infringement cases).

Defendants also argue that the Court should take notice that no statute of limitations potentially applicable in this case extends longer than five years, and that Darger died nearly fifty years ago. *See* 17 U.S.C. § 507(b) (three years for copyright infringement); *Champion Labs.*, 157 F. Supp. 3d at 764 (Lanham Act violations incorporate the analogous state statute of limitations, which in Illinois, is the IUDTPA's three year statute); *Persis Int'l, Inc. v. Burgett, Inc.*, No. 09 C 7451, 2012

8

WL 4176877, at *3–4 (N.D. Ill. Sept. 18, 2012) (three-year statute of limitations for common law unfair competition claim and a claim under the IUDTPA); *Greenberg v. Broad Cap. Assocs., Inc.*, No. 02 C 6116, 2002 WL 31269617, at *3 (N.D. Ill. Oct. 9, 2002) (citing 735 ILCS 5/13-205) (claims for conversion and unjust enrichment are subject to a five-year statute of limitations).

Nonetheless, there are two conceivable set of facts consistent with the Complaint by which the Estate could defeat a statute of limitations defense. *Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003) ("[A]t [the motion to dismiss] stage, the question is only whether there is any set of facts that if proven would establish a defense to the statute of limitations," (citation omitted)). First, under the separate-accrual rule which applies to the Copyright Act, the statute of limitations runs from each successive violation. *Petrella*, 572 U.S. at 671. "Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete 'claim' that 'accrue[s]' at the time the wrong occurs." *Id.* (additions in original). The Complaint not only alleges that the Lerners infringed the copyrights upon Darger's death 50 years ago, but also that Defendants continue to hold themselves out as owners of Darger's copyrights and to "distribute, provide, market, advertise, promote, copy, exhibit, reproduce, and offer for sale" Darger's works and to use his name and mark. R. 1 at ¶¶ 52–56. According to the Complaint, Defendants are thus currently violating the Copyright Act, Landham Act, and IUDTPA, and the Estate's claims arising from those current violations continue to accrue.

9

Second, the discovery rule delays the start of the statute of limitations until "the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his rights." *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613 (7th Cir. 2014) (quoting *Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004)). The discovery rule standard requires actual or constructive knowledge of the basis for a claim. *Chicago Bldg. Design*, 770 F.3d at 615. Assuming *arguendo* that the Court cannot consider the extraneous facts and evidence cited by the Estate, it is still reasonable to infer that the Estate representative did not have a reasonable basis for learning of Defendants' conduct until recently. This argument is entirely consistent with the allegations contained in the Complaint, for example: the difficult circumstances of Darger's childhood which cut him off from any extended family (R. 1 ¶¶ 27–28); that he lived a solitary life working "menial" jobs (*id.* ¶¶ 29–30); that he died intestate (*id.* ¶ 2); that his art, though posthumously well-regarded, is mainly known in the niche genre of "outsider art," (*id.*); and that Sadowski was appointed administrator of the Estate by the Cook County Probate Court in only 2022 (*id.* ¶ 16). Therefore, the Estate has not pleaded itself out of court, and the question of timeliness will be decided later in the case with the benefit of discovery. *N. Tr. Co.*, 372 F.3d at 888 ("Resolving defenses comes after the complaint stage.").

## III.  Copyright Infringement Claim

### A. Ownership of the Copyrights

Next, Defendants argue that the Estate has not shown that the Lerners lacked ownership of the Darger copyrights in order to make out a copyright infringement

claim. Apparently confusing the standard for consideration of motions to dismiss with that used for motions for summary judgment, Defendants argue that the Estate failed to include "(1) the evidence documenting Mr. Darger's actions; (2) evidence documenting the gift is a 'pretense,' and 'false,' including documents and testimony; and (3) Lerners [sic] knowledge that they were not entitled to the works, when they had this knowledge, how they obtained it, and details of their intent for each act." R. 18 at 7. But a Complaint is not required to include evidence, documents, or testimony and may proceed on "information and belief." *Twombly*, 550 U.S. at 556 (Federal Rule of Civil Procedure 8(a) "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence," (quotations omitted)); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (noting that a complaint need not plead evidence). Rule 8(a) requires only that a defendant is given "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (cleaned up).[4]

Defendants also accuse the Complaint of failing to "rule out competing inferences," such as that Darger gifted his work to the Lerners. R. 18 at 8. Defendants explain that the Lerners were Darger's landlords for twelve years and that he had a close relationship with them and relied upon them for his basic existence. Therefore, Defendants argue that the Estate should have foreclosed the reasonable inference

---

[4] Because the Estate has not alleged fraud, the heightened pleading standard under Fed. R. Civ. P. 9(b) does not apply.

11

that Darger gifted his works to them. But this argument is meritless. It not only relies on extraneous documents and evidence,[5] but also asks the Court to draw inferences in favor of Defendants rather than the Plaintiff, which is an inversion of the motion to dismiss standard. And, as previously explained, a complaint is not required to anticipate defenses or to foreclose competing inferences. *N. Trust Co.*, 372 F.3d at 888 ("[C]omplaints need not anticipate and attempt to plead around defenses."). Rather, at this stage, the Court must accept as true the allegation that Darger did *not* gift his works to the Lerners.

## B. Citation to the Wrong Copyright Statute

Defendants also argue that the Estate's copyright infringement claim should be dismissed because it cites the wrong standard. The Complaint alleges that the Lerners' claim of ownership in the copyrights is invalid because Darger did not convey ownership of the underlying copyrights in his works to the Lerners in writing, which is required under the 1976 Copyright Act. R. 1 ¶¶ 8, 63; 17 U.S.C. § 204(a) ("A transfer of copyright ownership . . . is not valid unless an instrument of conveyance, or a note or memorandum of transfer, is in writing and signed by the owner of the rights conveyed."). Defendants argue that the 1976 Copyright Act was not in force at Darger's death in 1973, and that, under the 1909 Copyright Act and the common law, transfer of the physical work was sufficient to transfer the associated copyrights and no writing was required.

---

[5] Defendants simultaneously and inconsistently accuse the Estate of wrongfully including extraneous facts in its response brief while themselves including extraneous facts in their briefs to defeat the Estate's claims.

It is true that the 1976 Copyright Act became effective on January 1, 1978, after Darger's death. Prior to that, copyrights of unpublished works like Dargers' were controlled by the common law (published works were governed by the 1909 Copyright Act). 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyrights*, § 1.14(A). The later 1976 Copyright Act explicitly preempted all pre-1978 common law copyrights and "transmuted" them "into statutory copyrights." *Id.* § 10.03(B)(2). But "the respective property rights of the parties" are still determined by the law that applied at the time of transfer. *Stewart v. Abend*, 495 U.S. 207, 239 n.1 (1990) (Stevens, J., dissenting on other grounds) (in construing a copyright infringement claim on a pre-1978 copyright, "the cause of action [is] created by the 1976 Act," but questions of ownership and transfer are determined by the law applicable at the time the copyright was created); *see also* 3 *Nimmer on Copyrights*, § 10.03(B)(2) (citing *Roth v. Pritikin*, 710 F.2d 934 (2d Cir. 1983), *cert. denied*, 464 U.S. 961 (1983)).

A transfer of a common law copyright did not need to be in writing. *Dave Grossman Designs, Inc. v. Bortin*, 347 F. Supp. 1150, 1154 (N.D. Ill. 1972) ("[A]ssignment of a common law copyright need not be in writing and may even arise by implication from conduct."). Though a transfer of the material object could normally evidence an intent to transfer the underlying common law copyright, the issue remained the intent of the transferor:

> The question arises whether conveyance of a material object suffices to transfer the common law copyright in the work. . . . [I]t has been held that delivery of a manuscript suffices for that purpose—so long as the intent to pass title in the common law copyright is likewise present. . . . Nonetheless, the question in all instances would seem to be one of intent—to the extent that circumstances arise in which even long

13

> adverse possession fails to warrant the inference that the author
> intended to transfer his common law copyright, no transfer occurred.

3 *Nimmer on Copyright*, § 10.03(B)(2) (citations omitted).[6] Therefore, absent clear

evidence of intent, mere ownership of a material object did not necessarily impute

ownership of the common law copyright in the object. *See Kinelow Publ'g Co. v.

Photography in Bus., Inc.*, 270 F. Supp. 851, 853–54 (S.D.N.Y. 1967); *Nimmer on

Copyright*, § 10.03(B)(2) n.104.3;[7] *but see*, *Pushman v. N.Y. Graphic Soc'y, Inc.*, 287

N.Y. 302 (1942) (if a sale of a tangible work was absolute and unconditional, the whole

property in the work passed to the purchaser, including the copyright); *Ripley v.

Findley Galleries*, 155 F.2d 955 (7th Cir. 1946) (refusing to consider the controversial

*Pushman* rule).

Because the Complaint cites the wrong standard (the 1976 Copyright Act's

writing requirement) and does not make any specific allegations as to Darger's intent,

Defendants argue that the Estate has failed to adequately allege that the Lerners

lack ownership in the copyrights to Darger's work. But whether the Lerners can

properly claim ownership in the copyrights is a defense to infringement, and, as the

Court has explained, the Complaint need not plead around defenses. The Complaint

---

[6] Defendants make much of a "fine art" exception raised by Nimmer and disregarded by the Estate. The fine art exception discussed by Nimmer is referring to New York and California statutes, which are not at issue here and are completely irrelevant. 3 *Nimmer on Copyright*, § 10.03(B)(2) n.102. There was no exception for the sale of fine art applicable in Illinois. *Dave Grossman Designs*, 347 F. Supp. at 1154.

[7] This footnote discusses a scenario similar to the allegations in the Complaint: "if author A submits a story to editor E at a magazine for consideration . . . E waits decades until A is dead; and then E publishes it under a purported grant from A, there is scant reason to credit the necessary ingredient of A's intent to convey copyright ownership."

states that the Lerners' claim of ownership in the copyrights is invalid and based on a false claim that Darger gifted the works to them, and it is a reasonable inference under the common law that the lack of a writing and the circumstances of the case evidence Darger's lack of intent to transfer the copyrights to the Lerners. *Martinetti v. Maguire*, 16 F. Cas. 920, No. 9173 (C.C. Cal. 1867) (early copyright case suggesting that the absence of a writing creates an inference that the assignee knew he was not receiving a valid assignment of a common law copyright). That is enough to state a plausible claim at this point in the case. *Twombly*, 550 U.S. at 555 ("detailed factual allegations" are not required at the pleading stage).

As a final matter, Defendants' argument that the Estate should be forced to replead merely because it cited the 1976 Copyright Act is meritless. First, the Estate's cause of action still arises from the 1976 Act because the common law copyrights in Darger's works were given statutory protection upon enactment of the 1976 Act; it is only questions of ownership and transfer that are governed by the common law. *Stewart*, 495 U.S. at 239 n.1. Second, at the motion to dismiss stage, "citing the wrong statute needn't be a fatal mistake," *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010), "as long as the [plaintiff's] allegations gave notice of a legally sufficient claim" and the defense is not prejudiced by the mistake. *Ryan v. Ill. Dep't of Child. & Fam. Servs.*, 185 F.3d 751, 764 (7th Cir. 1999). Because Defendants are aware of the correct standard (indeed, they brought it to the Court's attention), there is no prejudice caused by the Complaint's citation to the 1976 Copyright Act. Defendants' citation to *Helm v. Resolution Tr. Corp.*, 84 F.3d 874, 878 (7th Cir. 1996)

is inapplicable because the court in that case considered whether to grant relief from a *judgment* based upon the wrong statute. Therefore, the Estate has adequately pleaded copyright infringement and that the Lerners lack ownership of the copyrights to Darger's works.[8] Defendants' motion to dismiss Counts I and II is denied.

## IV. Preemption of Equitable Easement and IUDTPA Claims

Next, citing 17 U.S.C. § 301, Defendants argue that the Copyright Act preempts the Estate's equitable easement (Count III) and IUDTPA (Count VI) claims. The purpose of § 301 was to preempt state common law copyrights, as discussed in the previous section. 3 *Nimmer on Copyrights*, § 10.03(B)(2). It contains an exception for "rights or remedies under the common law or statutes of any State with respect to . . . activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright." 17 U.S.C. § 301(b)(3).

The Seventh Circuit's two-part test to determine whether a state cause of action is preempted asks first whether "the work in which the right is asserted [is] fixed in tangible form and come[s] within the subject matter of copyright . . . ." *Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 500 (7th Cir. 2011) (quoting *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 674 (7th Cir. 1986)). It is undisputed here that Darger's works are the subject of copyright. The Court's inquiry is therefore solely focused on the second prong of the test, which asks whether "the rights in the state law claims [are] equivalent to the exclusive rights under the

---

[8] To the extent Defendants base their arguments for dismissal of other counts on the same reasoning, those arguments also fail.

16

Copyright Act." *Seng-Tiong Ho*, 648 F.3d at 501. Those rights are the "reproduction, adaptation, publication, performance, and display" of the copyrighted work. *Id.* (quoting *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 909 (7th Cir. 2005)). Equivalent rights exist "if under state law the act of reproduction, performance, distribution, or display, no matter whether the law includes all such acts or only some, will in itself infringe the state-created right." *Seng-Tiong Ho*, 648 F.3d at 501 (quoting 1 *Nimmer on Copyright*, § 1.01(B)(1) (2010)).

### A. Equitable Easement

First, in its equitable easement claim, the Estate seeks physical access to the original works in Kiyoko's possession so that the Estate can create an alternative master copy of Darger's works. R. 1 ¶ 79. The right to physically access Darger's works—which is what is requested by the equitable easement claim—is substantively different than the rights conferred under the Copyright Act. The equitable easement claim is thus not preempted.

### B. IUDTPA

In Count VI, the Estate alleges that Defendants violated the IUDTPA, 815 ILCS 510/2, by "falsely and deceptively representing to consumers that they are associated with the Estate and Darger," and that this misleading practice "is directed to the market generally." R. 1 ¶¶ 97–98.

"Courts in this circuit have generally held that a deceptive trade practices claim where a plaintiff alleges that the defendant passed off the plaintiff's copyrighted works as the defendant's (i.e., 'reverse passing off') involves conduct that

is not qualitatively different from that proscribed under the Copyright Act and is therefore preempted." *Carter v. Pallante*, 256 F. Supp. 3d 791, 805 (N.D. Ill. 2017). The case cited by Defendants in support of their argument, *Defined Space, Inc. v. Lakeshore E., LLC*, 797 F. Supp. 2d 896, 902–03 (N.D. Ill. 2011), is one such example. The court there found that, because the IUDTPA claim was based off the defendant using the plaintiff's photographs on its website without the plaintiff's permission, the plaintiff's IUDTPA claims were preempted by the Copyright Act. Specifically, the court found that the rights asserted under the IUDTPA (namely, publication of the photographs) were "not qualitatively different from the rights conferred under the Copyright Act." *Id.* at 903. Further, the plaintiff did not base its IUDTPA count on any additional facts and simply incorporated all prior allegations. *Id.*

The Estate alleges that *Defined Space* is distinguishable because the Estate's IUDTPA claim in this case is not premised on "reverse passing off" (i.e., Defendants attempting to pass Darger's work off as their own), but on Kiyoko Lerner falsely holding herself out to consumers as a representative of the Estate. Making such a misrepresentation about one's affiliation, by itself, is not among the exclusive rights enumerated in § 106 of the Copyright Act. *Carter*, 256 F. Supp. 3d at 805 (finding that IUDTPA claim based on reverse passing off was preempted, but that IUDTPA claim based on false advertising statements was not); *Stephen & Hayes Constr., Inc. v. Meadowbrook Homes, Inc.*, 988 F. Supp. 1194, 1199 (N.D. Ill. 1998) (IUDTPA claim based on false advertising of a product's affiliation was not preempted); *see also* 1 *Nimmer on Copyright*, § 1.15(E)(4) (distinguishing between the preemption of

IUDTPA claims based on reverse passing off and those based on fraud or confusion). Consequently, to the extent that the Estate is asserting an IUDTPA claim based only on Kiyoko Lerner's misrepresentations about her own affiliation with the Estate, it is not preempted by the Copyright Act.

## V.   False Designation of Origin, Cybersquatting, and Unfair Competition Claims

The Estate's Lanham Act claims include false designation of origin and unfair competition (Count IV) and cybersquatting (Count VIII). *See* 15 U.S.C. § 1125(a), (d). In Count V, the Estate further pleads a common law unfair competition claim on the same conduct. The "common thread" in Lanham Act trademark infringement and unfair competition claims is the requirement that the "mark is protectable, and . . . that the defendant's use of that mark is likely to cause confusion among consumers." *Eagle F. v. Phyllis Schlafly's Am. Eagles*, 451 F. Supp. 3d 910, 918–19 (S.D. Ill. 2020) (quoting *Phoenix Ent. Partners v. Rumsey*, 829 F.3d 817, 821 (7th Cir. 2016)). In order to state a claim under the Lanham Act's cybersquatting provision, the plaintiff must allege that "(1) it had a distinctive or famous mark at the time the domain name was registered, (2) the defendant registered, trafficked in, or used a domain name that is identical or confusingly similar to plaintiff's mark, and (3) the defendant had a bad faith intent to profit from that mark." *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 763 (N.D. Ill. 2008) (quoting *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 914 (N.D. Ill. 2007)).

First, Defendants argue that each of these counts should be dismissed because the Complaint fails to identify the trademark infringed upon and why Darger's name

is protectable. R. 18 at 11. This is puzzling—the Complaint does in fact identify the trademark ("the HENRY DARGER mark and name" (R. 1 ¶ 81)) and that it is protectable because it identifies the source or origin of Darger's works (*id.*). Defendants similarly argue that, because Kiyoko Lerner holds a registered trademark in Darger's name, the Estate must rebut Kiyoko Lerner's trademark protection and prove its right to use Darger's mark before claiming any trademark and cybersquatting violation. R. 24 at 13 (citing *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 638–39 (7th Cir. 2001)). But whether Kiyoko Lerner has a registered trademark in Darger's name is outside the four corners of the Complaint and is therefore a factual dispute and not properly considered on a motion to dismiss. *Vulcan Golf*, 552 F. Supp. 2d at 762–66 (finding that issues of ownership, use, whether marks were protectable or "confusingly similar," and bad faith intent were factual disputes not proper to a motion to dismiss). Furthermore, the Estate is not required to anticipate or rebut any defenses or provide any evidence by its Complaint.

The Estate has asserted that Lerner's unauthorized use in commerce of the Darger name and the HENRY DARGER mark, including Lerner's use of the "officalhenrydarger.com" domain, is likely to cause confusion. R. 1 ¶ 83. Defendants argue these allegations are conclusory. "Because the likelihood of confusion test is a fact-intensive analysis, it ordinarily does not lend itself to a motion to dismiss. Thus, the court's role at the motion to dismiss stage is limited to assessing whether [plaintiff] has pleaded facts that plausibly could result in a successful outcome on the likelihood of confusion element of its claim." *Slep-Tone Entm't Corp. v. Coyne*, 41 F.

20

Supp. 3d 707, 715 (N.D. Ill. 2014) (citations and internal quotation marks omitted); *Vulcan Golf*, 552 F. Supp. 2d at 769 (rejecting defendants' argument that the plaintiffs had not adequately alleged likelihood of confusion because this was a fact-based inquiry, and "plaintiffs need not prove their case at this point in time.").

As for the argument that the Estate had not properly pleaded bad faith intent, plaintiffs are similarly not required to allege specific facts establishing bad faith at the pleading stage. *Flentye*, 485 F. Supp. 2d at 914 (plaintiffs can "easily satisf[y]" the bad faith element "by explicitly alleging that Defendants registered the domain names in bad faith"). Here, the Estate alleges that Lerner willfully uses the Darger name and mark to "cause confusion, mistake, or deception" and to market and sell Darger's works, R. 1 ¶¶ 83, 85, and that Lerner registered the domain "officialhenrydarger.com" in bad faith, *id.* ¶¶ 108, 110. At the pleading stage, that is all that is required. *Est. of Maier v. Goldstein*, No. 17 C 2951, 2017 WL 5569809, at *8 (N.D. Ill. Nov. 20, 2017) (specific allegation of "bad faith" enough to survive motion to dismiss). Defendants' motion to dismiss Counts IV, V, and VIII is therefore denied.

## VI. Other Issues

Defendants finally raise a laundry list of other minor issues that they claim should cause the Estate to replead. First, Defendants state that the remedies sought by the Estate are conclusory and "do not seem to make sense in the context of the case." R. 18 at 13. But Defendants do not specify the remedies with which they take issue and why they are inappropriate. The Court cannot therefore consider this argument. *Mwangangi v. Nielsen*, 48 F.4th 816, 832 (7th Cir. 2022) ("A litigant who

21

fails to press a point by supporting it with pertinent authority, or by showing why it is a good point . . . forfeits the point.") (quoting *United States v. Giovannetti*, 919 F.2d 1223, 1230 (7th Cir. 1990)).

Defendants' argument that the Estate must replead because it has failed to identify the claimants is similarly meritless. The Estate is a legal entity that alleges it has the right to Darger's works and related trademarks and copyrights. It is the claimant. Nonetheless, the Complaint identifies Christen Sadowski as the administrator of the Estate. R. 1 ¶ 16. Defendants' citation to *DJM Logistics, Inc. v. FedEx Ground Package Sys., Inc.*, 39 F.4th 408, 413 (7th Cir. 2022) is inapposite. The Seventh Circuit in that case upheld the lower court's dismissal because the plaintiff failed to identify that it had rights under a contractual relationship. Here, there is no such contractual relationship.

Defendants next argue that the Estate did not have authority from the Cook County Probate Court to pursue the claims in this case at the time the Complaint was filed in July 2022. But this argument is moot because the Probate Court retroactively granted that authority on September 8, 2022. *See* R. 18 at 15 ("The Supervised Administrator's *Petition for Authorization to Pursue Action* is granted. The Supervised Administrator is authorized to pursue the action now pending in the Northern District of Illinois, *Estate of Henry Darger v. Kiyoko Lerner, et al.*, No. 1:22-cv-03911.").

Finally, Defendants argue that the Estate must replead because the Complaint lists two different dates of death: 1973 (¶¶ 2, 4, 27, 30) and 1972 (¶ 30). But this minor

scrivener's error is not a basis for forcing the Estate replead because it has no legal effect. In the end, Defendants do not present any convincing arguments that the Court should grant their motion to dismiss.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (R. 18) is denied. Defendants are ordered to file an answer to the Complaint by April 18, 2023.


ENTERED:


_Thomas M. Durkin_____

Honorable Thomas M. Durkin
United States District Judge

Dated: March 28, 2023