IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ESTATE OF HENRY JOSEPH DARGER, | |
| Plaintiff, | |
| v. | 22 CV 3911 |
| KIYOKO LERNER, individually and as Executor of the Estate of Nathan Lerner, and as trustee of any trust established by Nathan Lerner, and The Nathan and Kiyoko Lerner Foundation. | HON. THOMAS M. DURKIN HON. SHEILA M. FINNEGAN |
| Defendants. | |

## ANSWER & AFFIRMATIVE DEFENSES

The defendant Kiyoko Lerner, individually, states the following in response to the Complaint:

### ANSWER

Ms. Lerner responds to the referenced paragraphs of the Complaint below:

1.     Admit identities of the named parties. Deny remaining allegations.

2.     Admit year of death, posthumous identification, intestacy, and location of death. Admit definition of outsider art includes the matters alleged. Deny the allegations as a limitation.

3.     Admit that Mr. Darger was unknown as an artist during his lifetime and left a body of works that includes what is alleged. Admit that his works are known for matters that include what is alleged, sell for a variety of prices, and are displayed in museums internationally. Deny remaining allegations.

4.     Admit all but "approximately 1930." Deny "approximately 1930" if it does not

include the year 1932.  Admit if "approximately 1930" includes the year 1932.

5.      Admit all but "*magnum opus.*"  Lack sufficient information to admit or deny Mr. Darger's opinion about "*magnum opus.*"

6.      Admit.

7.      Denied.

8.      Admit the language quoted comes from the referenced statute.  Deny the applicability of the referenced language.

9.      Admit difference between rights to tangible works/objects and rights to copyright. Deny the remaining allegations.

10.     Admit Ms. Lerner's control of and copyrights for some of the works of Mr. Darger.  Deny lack of "valid rights."  Lack sufficient information to admit or deny the number of illustrations that are involved with claims in any manner by the Estate.

11.     Lack sufficient information about the definition to admit or deny the term "profit."  Admit separation and sale of some of the bound volumes of Mr. Darger's work.  Admit no consent from Estate as a factual allegation and deny consent as a legal requirement and the remaining allegations.

12.     Admit some licensing agreements entered into with third parties about the copyrights.  Admit no consent from Estate as a factual allegation.  Deny consent as a legal requirement and remaining allegations.

13.     Admit use of Darger works for  different purposes that include museum display. Deny remaining allegations.

14.     Deny.

15.     Lack sufficient information about the definition to admit or deny the term

"profit." Deny the remaining allegations.

16.     Admit.

17.     Admit creation. Deny current existence.

18.     Deny address. Admit remaining allegations.

19      Admit appointment. Deny current existence of Foundation and status as trustee.

20.     Admit establishment of the estate and appointment of Ms. Lerner. Deny current existence of estate and status as trustee.

21.     Admit that the case includes the matters referenced except incorrect statutory reference for copyright claim and deny that the referenced copyright statute applies. Deny remaining allegations.

22.     Admit.

23.     Admit.

24.     Admit.

25.     Admit.

26.     Admit for Kiyoko Lerner, individually. Deny the remaining allegations because the defendants no longer exist.

27.     Admit.

28.     Lack sufficient information about the definition to admit or deny the term "profits." Admit.

29.     Admit.

30.     Admit all but "approximately 1930." Deny "approximately 1930" if it does not include the year 1932. Admit if "approximately 1930" includes the year 1932.

31.     Admit that the allegations describe much of Mr. Darger's work and his methods.

Deny that the description is exhaustive.  Admit that *Realms of the Unreal* is famous.  Lack sufficient information to admit or deny "most famous."

32.     Admit reason for praise as described.  Lack sufficient information to admit or deny "universally."  Admit Christie's  allegations.

33.     Admit description.  Deny that the description is complete.

34.     Admit description.  Deny that the description is complete.

35.     Admit description.  Deny that the description is complete.

36.     Deny.

37.     Deny.

38.     Lack sufficient information about the definition to admit or deny the term "profits."  Admit past creation and past other actions.  Deny current existence and activities.

39.     Admit past creation and past appointments.  Deny current existence and appointments and the remaining allegations.

40.     Admit past action for the work referenced within Exhibit 3 to the Complaint, Dkt. 1.  Deny remaining allegations.

41.     Admit past actions.  Deny current existence and actions for the Foundation and estate and current activities of Ms. Lerner.

42.     Deny "commercially exploit."  Admit the remaining allegations.

43.     Admit owners for Mr. Darger's works originally.  Deny allegations for works, now, previously sold or otherwise transferred.   Lack sufficient information about the term to admit or deny "representatives."

44.     Deny "false pretense."  Admit remaining allegations.

45.     Deny "falsely acting as representatives of the 'Henry Darger Estate.'"  Admit

remaining allegations.

46.     Lack sufficient information about the definition to admit or deny the term "profit." Admit the remaining allegations.

47.     Deny consent of the Estate as a legal requirement. Admit the remaining allegations.

48.     Admit.

49.     Admit.

50.     Admit that the exhibits appear to be true and correct copies of the pages depicted. Lack sufficient information to admit or deny further allegations and completeness.

51.     Admit factual allegations. Deny legal requirement.

52.     Deny "falsely hold themselves out," "exploiting," legal requirement of "authorization or permission of Estate," and "Estate's detriment." Admit remaining factual allegations. Deny any remaining legal allegations.

53.     Deny legal requirement of consent and the current existence and activities of the Foundation and the estate of Nathan Lerner. Admit that Ms. Lerner retains the ability to act as alleged but deny "convert" and "infringe." Deny the remaining allegations.

54.     Deny legal allegations of "willfully appropriated," unauthorized," and "exploitation." Deny use of HENRY DARGER mark and name. Admit factual use as otherwise alleged.

55.     Admit factual allegations. Deny legal requirement.

56.     Admit factual allegations "offer for sale and promote the Darger Works and intellectual property." Deny remaining allegations.

57.     Deny current existence and activities of the Foundation and the estate of Nathan

Lerner and the use and benefit of the HENRY DARGER mark.  Admit remaining allegations.

58.     Deny.

59.     Deny.

60.     Deny.

61.     Ms. Lerner incorporates her answers to the referenced allegations.

62.     Deny.

63.     Deny legal requirement.  Admit factual allegation.

64.     Deny.

65.     Deny.

66.     Ms. Lerner incorporates her answers to the referenced allegations.

67.     Admit.

68.     Admit.

69.     Deny.

70.     Admit.

71.     Deny legal conclusion of "wrongfully created."  Admit allegations factually.

72.     Lack sufficient information to admit or deny the information to and belief of the

Estate.  Admit allegations factually with denial of "exploited."

73.     Deny

74.     Deny.

75.     Ms. Lerner incorporates her answers to the referenced allegations.

76.     Deny.

77.     Deny.

78.     Deny legal rights of the Estate.  Admit factual allegations.

79.    Deny.

80.    Ms. Lerner incorporates her answers to the referenced allegations.

81.    Deny any rights of the Estate in works of Mr. Darger.  Lack sufficient information to admit or deny the remaining allegations.

82.    Lack sufficient information to admit or deny the remaining allegations.

83.    Deny.

84.    Deny.

85.    Deny.

86.    Deny.

87.    Deny.

88.    Deny.

89.    Ms. Lerner incorporates her answers to the referenced allegations.

90.    Deny.

91.    Deny.

92.    Deny.

93.    Deny.

94.    Deny.

95.    Ms. Lerner incorporates her answers to the referenced allegations.

96.    Admit.

97.    Deny.

98.    Deny.

99.    Deny.

100.    Deny.

101.    Ms. Lerner incorporates her answers to the referenced allegations.

102.    Deny.

103.    Lack sufficient information about the definition to admit or deny the term "profiting." Deny the remaining allegations.

104.    Deny.

105.    Ms. Lerner incorporates her answers to the referenced allegations.

106.    Admit registration and use of "officialhenrydarger.com." Lack sufficient information to admit or deny that "officialhenrydarger.com" encompasses the HENRY DARGER mark, name, and identity. Deny remaining allegations.

107.    Lack sufficient information about the definition to admit or deny "distinctive." Deny the remaining allegations.

108.    Deny.

109.    Deny.

110.    Deny.

111.    Deny.

112.    Deny.

113.    Lack sufficient information to admit or deny the Estate's belief. Lack sufficient information about the definition to admit or deny the term "profits." Deny allegations about the Estate's belief.

114.    Deny.

115.    Deny.

116.    Deny.

117.    Ms. Lerner incorporates her answers to the referenced allegations.

118.    Deny.

119.    Deny.

120.    Deny legal requirement.  Admit factual allegation.

121.    Deny.

122.    Admit.

123.    Admit refusal.  Deny justification.

124.    Deny.

REQUEST FOR RELIEF.     Deny.

## <u>*AFFIRMATIVE  DEFENSES*</u>

Ms. Lerner states the following as her affirmative defenses to the Complaint, Dkt. 1:

### I
### <u>Unclean  Hands</u>

#### *Mr. Bergland's Affidavit, Letters To The Estate's Counsel & Ms. Lerner's Affidavit*

1.      On and/or after December 15, 2022 the Estate's counsel received the affidavit of David S. Bergland, which is attached as Exhibit A [hereinafter Mr. Bergland's affidavit], and a letter from Ms. Lerner's counsel of December 15, 2022, both of which were transmitted by e-mail and first-class mail.

2.      Mr. Bergland's affidavit describes his meeting with Henry Joseph Darger, Jr. [hereinafter Mr. Darger] during Mr. Darger's hospitalization that preceded Mr. Darger's death and states that Mr. Darger said to Mr. Bergland:

They [Mr. Darger's art materials] belong to Mr. Lerner.

3.      The Estate and its counsel attached the affidavit of Ms. Lerner as Exhibit B, Dkt. 23-2 [hereinafter Ms. Lerner's affidavit], to the response to the motion to dismiss, Dkt. 23, and

the affidavit states within paragraphs 15 and 16:

> 15.    Before he passed away, Darger gave all of his belongings to my late husband, Nathan Lerner, before he passed away.
> 16.    My husband gave all of Mr. Darger's belonging to me before he passed away.

4.    The Estate stated on pages 8-9 of its response to the motion to dismiss, Dkt. 23, its understanding about Ms. Lerner's understanding of Mr. Darger's gift of his art materials to her husband:

> In her motion and its attached affidavit, Lerner asserted that the value of the Estate was $0.00 because Darger gave all of his belongings to her husband, Nathan Lerner, prior to his death. Lerner further stated in her affidavit that prior to her husband's death, he gave all of Darger's belongings to her, which consisted of . . . .

5.    In the letter of December 15, 2022, the Estate's counsel was asked to withdraw the Complaint and to produce each statement of Henry Darger about and of each person who spoke with Mr. Darger about ownership of his art materials, including copyright and other intellectual-property rights, and other, admissible evidence of the current ownership of his art and materials, including copyright and other intellectual-property rights.

6.    On and/or after February 21, 2023, the Estate's counsel received a letter from Ms. Lerner's counsel, which was transmitted by e-mail and first-class mail, that requested that the Complaint and the response be withdrawn and that the Estate's counsel produce each statement of Mr. Darger about and of a person who spoke with Mr. Darger about ownership of his art materials, including copyright and other intellectual-property rights, and other evidence of the current ownership of his art materials, including copyright and other intellectual-property rights.

7.    The Estate and the Estate's counsel have not produced and otherwise identified, other than Ms. Lerner's affidavit, any statement authored by Mr. Darger about and of a person who spoke with Mr. Darger about ownership of his art materials, including copyright and other

intellectual-property rights, and have not produced and otherwise identified admissible evidence of the current ownership of his art materials, including copyright and other intellectual-property rights.

8.      On information and belief, the Estate and the Estate's counsel do not retain, other than Mr. Bergland's affidavit and Ms. Lerner's affidavit, any statement authored by Mr. Darger about and of a person who spoke with Mr. Darger about ownership of his art materials and do not retain other admissible evidence of the current ownership of his art materials, including copyright and other intellectual-property rights.

### Advice Of Counsel

9.      Ms. Lerner relied on legal advice of the Kirkland & Ellis law firm for copyright claims.

10.     At all times relevant, Ms. Lerner and her husband lacked legal training and were not lawyers.

11.     The Estate and its counsel knew or should have known that Mr. Lerner relied on legal advice because the Kirkland & Ellis law firm is identified within copyright documents filed with the Copyright Office, an example of which is attached as Exhibit B.

12.     The December 15, 2022 letter to the Estates' counsel from Ms. Lerner's counsel stated Ms. Lerner's reliance on advice of a law firm for copyright matters.

### Allegations, Statements, And Conduct Of The Estate And Its Counsel

13.     After receiving Mr. Bergland's affidavit, the December 15, 2022 letter from Ms. Lerner's counsel, and the February 21, 2023 letter from Ms. Lerner's counsel and after retaining Ms. Lerner's affidavit, the Estate and/or the Estate's counsel decided to continue to pursue the Complaint, Dkt. 1, which alleges:

          a.      "Defendants had and continue to have a bad faith intent to profit

from the "officialhenrydarger.com" domain name." within paragraph 108 of the Complaint, Dkt. 1; and

b.  "Defendants have violated the UDPA [so in original] by falsely and deceptively representing to consumers that they are associated with the Estate and Darger and because the Defendants have used deception, fraud, false pretense, misrepresentation or concealment, suppression or omission of material facts, either expressly or by implication" within paragraph 97 of the Complaint, Dkt. 1.

14.  After receiving Mr. Bergland's affidavit, the December 15, 2022 letter from Ms. Lerner's counsel, and the February 21, 2023 letter from Ms. Lerner's counsel and after retaining the Ms. Lerner's affidavit, the Estate and its counsel decided to continue to pursue the following allegations on "information and belief" within the Complaint, Dkt. 1, and the following statements within the response to the motion to dismiss, Dkt. 23:

a.  "Defendant's acts are willful with the deliberate intent to cause confusion and deception in the marketplace" within paragraph 59 of the Complaint, Dkt. 1;

b.  "Ms. Lerner engaged in a large scale enterprise of copyright infringement centered on the works of Henry Darger that continues to this day on page 2 of the response, Dkt. 23;

c.  "Defendants' conduct as alleged above is willful and is intended to, and is likely to, cause confusion, mistake, or deception" within paragraphs 85 and 91 of the Complaint, Dkt. 1;

d.  "willfully appropriated Darger's name and likeness" within paragraph 54 of the Complaint, Dkt. 1;

e.  "Additionally and throughout this period, Lerner willfully appropriated Darger's name and likeness in multiple ways, including without limitation, by using the trade name "HENRY DARGER" in connection with the domain name "officialhenrdarger.com" in order to falsely suggest a connection between Lerner's activities and Darger himself." on page 3 of the response, Dkt. 23;

f.  "Beginning in 1973, Lerner took control of the Darger works under the false pretense that Darger had gifted her and Nathan Lerner both the physical copies of the Darger Works and the underlying copyright and intellectual property embodied in the Darger Works." within paragraph 44 of the Complaint, Dkt. 1; and

g.  "Holding herself out as a representative of the "Henry Darger Estate" – or acting on behalf of the "Estate of Henry Darger", Compl. Dkt 1 Ex. 2, at 35, 38, Lerner engaged in a large scale enterprise of copyright infringement centered on the works of Henry Darger that continue to this day." on page 2 of the response to the motion to dismiss, Dkt. 23;

15. Each allegation and statement set out above within paragraphs 13 and 14 conflicts irreconcilably with Mr. Bergland's affidavit.

16. Each allegation and statement set out above within paragraphs 13 and 14 conflicts irreconcilably with the Ms. Lerner's affidavit.

17. On information and belief, each allegation and statement set out above within paragraphs 13 and 14 was filed without a reasonable basis.

18. After December 15, 2022, the Estate and its counsel knew or should have known that each allegation and statement set out above within paragraphs 13 and 14 was filed without a reasonable basis.

19. After December 15, 2022, the Estate and its counsel knew or should have known that each allegation set out above within paragraphs 13 and 14 was pursued without a reasonable basis.

20. After December 15, 2022, each allegation and statement set out above within paragraphs 13 and 14 was pursued without a reasonable basis.

### *Injury And Prejudice To Ms. Lerner*

21. As a direct-and-proximate result of the decisions of the Estate and the Estate's counsel to continue to pursue the Complaint, Dkt. 1, and to file and to pursue a response to Ms. Lerner's motion to dismiss, Dkt. 23, counsel for Ms. Lerner was required to file a motion to dismiss, Dkt. 18, a reply to the response of the Estate, Dkt. 24, an answer to the Complaint, and affirmative defenses to the Complaint.

22. As a direct-and-proximate result of the decisions of the Estate and the Estate's counsel to continue to pursue the Complaint, Dkt. 1, and to file and to pursue a response to Ms. Lerner's motion to dismiss, Dkt. 23, the Estate and its counsel filed, pursued, and did not

withdraw public documents that described the knowledge, intent, and actions of Ms. Lerner and her husband inaccurately and falsely.

**Unclean Hands From The Acts And Omissions Of The Estate And Its Counsel**

23.    The acts and omissions of the Estate and its counsel referenced above constitute misconduct in materials presented to the court and signed by the Estate's counsel that are applicable to the equitable doctrine of unclean hands.

24.    The acts and omissions of the Estate and the Estate's counsel referenced above constitute misconduct under the equitable doctrine of unclean hands that bars any equitable relief from this court in favor of the Estate.

WHEREFORE, defendant Kiyoko Lerner, individually, asks the court to order:

1.    All claims and portions of claims that rely on equitable relief from the court are dismissed with prejudice.

2.    Any further relief the court deems just.

3.    Further relief as may be requested by Ms. Lerner in the future and based on additional facts.

## II
## Abandonment

1-24.  Ms. Lerner realleges paragraphs 1 through 24 of Count I.

25.    The complaint, Dkt. 1, alleges within paragraph 2:

> "Henry Joseph Darger, Jr. ("Darger"), posthumously identified as an outsider artist[1], died intestate in 1973 in Chicago, Illinois. [fn. 1 Outsider art is a form of art typically characterized as self-taught art, where the artist usually has little or no contact with the mainstream art world or institutions.]"

26.    Mr. Darger rented an apartment from Ms. Lerner and/or her husband from 1959 until Mr. Darger's death, and Mr. Darger rented his apartment from a different owner(s) starting in 1932.

27.     Ms. Lerner and/or her husband were the owners of the apartment that Mr. Darger rented from the Ms. Lerner and her husband from 1959 until Mr. Darger's death.

28.     At the time of his death, Mr. Darger owed rent on his apartment.

29.     At all time relevant prior to the death of Mr. Darger, Mr. Darger's art materials and his-other possessions, which include but are not limited to manuscripts, clippings, photographs, and personal effects [hereinafter his-other possessions], did not leave his apartment.

30.     Prior to his death, Mr. Darger made no arrangements for the removal or transfer of his art materials and his-other possessions after his death other than to give his art materials Ms. Lerner's husband.

31.     Prior to his death, Mr. Darger made no request to the Lerners that they contact any of his relatives or give any of his relatives any of his art materials and his-other possessions.

32.     After the death of Mr. Darger, his art materials and his-other possessions remained within his apartment.

33.     Mr. Darger chose to and abandoned all his art materials and his-other possessions and all rights to his art materials and his-other possession before and upon his death other than to give his art materials Ms. Lerner's husband.

34.     At the time of his death, Mr. Darger's art materials retained no value

35.     At the time of his death, his-other possessions retained no value.

36.     Ms. Lerner and her husband, as owners and landlords of Mr. Darger's apartment. were and remain the owners of all rights in all Mr. Darger's art materials and his-other possessions independent of Mr. Darger's gift to Ms. Lerner's husband of Mr. Darger's art materials and his-other possessions.

WHEREFORE, defendant Kiyoko Lerner, individually, asks the court to order:

1.      The Complaint, Dkt. 1, is dismissed with prejudice.

### III
### Equitable  Claim

1-36.   Ms. Lerner realleges paragraphs 1 through 36 of Count II.

37.     The Estate alleges within paragraph 2 of the Complaint, Dkt. 1:

Henry Joseph Darger, Jr. ("Darger"), posthumously identified as an outsider artist[1], died intestate in 1973 in Chicago, Illinois.  [fn. 1  Outsider art is a form of art typically characterized as self-taught art, where the artist usually has little or no contact with the mainstream art world or institutions.]

38.     The Estate states on page 2 of the response to the motion to dismiss, Dkt. 23:

a.      she [Ms. Lerner] organized and authorized large scale exhibitions of Darger's works in museums and galleries.
b.      Though Henry Darger's works were never exhibited, publicized, or commercialized during his lifetime, Darger has attained significant posthumous acclaim.

39.     At the time of his death, Mr. Darger was not known as an artist within the art world and otherwise.

40      At the time of his death, Mr. Darger's art materials had not left his apartment.

41.     At the time of his death, Mr. Darger's art materials retained no value.

42.     Ms. Lerner and her husband expended efforts in time and expense to promote Mr. Darger and his art materials.

43.     Without the efforts of Ms. Lerner and her husband to promote Mr. Darger and to promote and to preserve his art materials, Mr. Darger's art materials would have been discarded and destroyed.

44.     Without the efforts of Ms. Lerner and her husband to promote Mr. Darger and to promote and to preserve his art materials, Mr. Darger and his art materials would have remained unknown within the art world and otherwise.

45.     The efforts of Ms. Lerner and her husband to promote Mr. Darger and to promote and to preserve his art materials created the current recognition of Mr. Darger and his art materials with the art world and otherwise.

46.     The efforts of Ms. Lerner and her husband to promote Mr. Darger and to promote and to preserve his art materials created the current values of the art materials of Mr. Darger.

47.     Ms. Lerner is owed the reasonable value of her efforts and her husband's efforts to promote Mr. Darger and to promote and to preserve his art and materials.

WHEREFORE, defendant Kiyoko Lerner, individually, asks the court to order:

1.      The Complaint, Dkt. 1, is dismissed with prejudice.

2.      The court finds and rules that Kiyoko Lerner and her husband earned all rights and value of the art materials of Henry Darger, Jr. created by her efforts and her husband's efforts to promote Henry Darger, Jr. and his art materials.

## IV
## Statutes Of Limitations

1-47.   Ms. Lerner realleges paragraphs 1 through 47 of Count III.

48.     Mr. Darger died on April 13, 1973.

49.     This case was filed on July 27, 2022.

50.     This case is the first claim filed against the Lerners by any relative of Mr. Darger or other person or entity regarding Mr. Darger's art materials and his other possessions.

51.     The Estate alleges states within its response to the motion to dismiss, Dkt. 23:

    a.      "A party has three years to bring a claim for copyright infringement." on page 6 of the response to the motion to dismiss, Dkt. 23;
    b.      The Lanham Act does not provide its own statute of limitations but instead incorporates the analogous state statute of limitations.  In Illinois, the analogous state statute is the Illinois Consumer Fraud and Deceptive Business Practices Act, which has a three-year statute of limitations." on page 6 of the response to the motion to dismiss, Dkt. 23;

c.      A party has three years to pursue both a common-law unfair competition claim, [so in original] and a claim under the Illinois Deceptive Trade Practices Act." on page 6 of the response to the motion to dismiss, Dkt. 23; and

d.      claims for conversion and unjust enrichment are subject to a five-year statute of limitations." on page 6 of the response to the motion to dismiss, Dkt. 23.

52.     The statute of limitations applicable to Counts I and II, for copyright infringement, extends back and allows claims for three years from the date of the filing of the Complaint, Dkt. 1.

53.     The statute of limitations applicable to Count III, equitable easement, is no more than five years.

54.     The statute of limitations applicable to Count IV, the Lanham Act, is three years.

55.     The statute of limitations applicable to Count V, common-law unfair competition, is three years.

56.     The statute of limitations applicable to Count VI, the Illinois Uniform Deceptive Trade Practices Act, is three years.

57.     The statute of limitations applicable to Count VII, unjust enrichment, is five years.

58.     The statute of limitations applicable to Count VIII, anticybersquatting, is three years.

59.     The statute of limitations applicable to Count IX, conversion, is five years.

60.     Each statute of limitations applicable to all Counts of the Complaint, Dkt. 1, began to run on the date of Mr. Darger's death, April 13, 1973, other than the statute of limitations for claims associated with Counts I and II, for copyright infringement.

61.     Each statute of limitations applicable to all Counts of the Complaint, Dkt. 1,

expired before the filing of the Complaint other than the statute of limitations for claims associated with Counts I and II, for copyright infringement.

62.     Tolling of each statute of limitations and each-other equitable time requirement applicable to each Count of the Complaint, Dkt. 1, is barred by the misconduct of the Estate and its counsel constituting unclean hands that is set out above.

WHEREFORE, defendant Kiyoko Lerner, individually, asks the court to order:

1.     All counts of the Complaint, Dkt. 1, are dismissed with prejudice except for the Counts associated with copyright infringement, Counts I and II

2.     The claims associated with copyright infringement, Counts I and II, arising before the three years immediately preceding the filing of the Complaint, Dkt. 1, are dismissed with prejudice.

## V
## Laches

1-62.   Ms. Lerner realleges paragraphs 1 through 62 of Count IV.

63.     On information and belief, all relatives of Mr. Darger knew or should have known of his death, his art materials, and their need to file claims before the expiration of each statute of limitations applicable the Complaint, Dkt. 1, because of reasons that include but are not limited to:

a.     relatives of Mr. Darger lived in Illinois, Wisconsin, and Indiana at relevant times;
b.     Mr. Darger and his art materials were reported, publicized, and exhibited within Illinois and through media distributed within Wisconsin and Indiana;
c.     relatives of Mr. Darger lived outside of Illinois, Wisconsin, and Indiana at relevant times;
d.     Mr. Darger and his art materials were reported, publicized, and exhibited outside of Illinois both nationally and internationally; and
e.     hiership information remains incomplete.

64.    On information and belief, no relatives of Mr. Darger exercised any diligence in response to the widespread reports about, publicity related to, and exhibitions of Mr. Dr. Darger and his art materials in trying to learn if they were related to Mr. Darger and if they retained any interest in his art materials and his other possessions.

65.    Ms. Lerner is unfairly prejudiced and harmed by the Estate's delay in presenting claims for reasons that include but are not limited to:

a.    she is unable to present live testimony from her husband, who died in 1997;

b.    she is unable to present live testimony from Mr. Bergland, who, on information and belief, died in 2008;

c.    she is unable to present live testimony from relevant, deceased witnesses, such as relatives of Mr. Darger, who could explain their knowledge and activities;

d.    she is unable to identify and to obtain readily documents that would identify the scope of knowledge about Mr. Darger and his art materials and the knowledge and activities of his relatives;

e.    the recollections of living witnesses are likely to be less complete now than they would have been if claims had been made within the statute of limitations;

f.    she reasonably relied on the statements of Mr. Darger that his art and materials were given to her husband and the statement of her husband, now deceased, that Mr. Darger's art and materials were given to her;

g.    she reasonably expended substantial time, effort, and expense to donate Mr. Darger's art materials to museums to promote Mr. Darger and his art materials;

h.    she reasonably expended substantial time, effort, and expense to donate funds to organizations to promote art for individuals with disabilities and to other charities;

i.    she and her husband kept Mr. Darger's apartment generally unchanged and did not rerent it for years because of their belief in the importance of Mr. Darger and his art materials and the related value of his apartment; and

j.    the Estate claims substantial amounts of art and/or funds related to Mr. Darger's art materials, return of which would cause substantial harm Ms. Lerner through the loss of both art and funds.

66.    Each equitable defense and claim by the Estate, including but not limited to a defense to laches and each claim of tolling of a statute of limitations, is barred because of the

misconduct of the Estate and its counsel constituting unclean hands that is set out above.

WHEREFORE, defendant Kiyoko Lerner, individually, asks the court to order:

1. All counts of the Complaint, Dkt. 1, are dismissed with prejudice except for the Counts associated with copyright infringement, Counts I and II, for the three years preceding the filing of the Complaint, Dkt. 1.

## JURY DEMAND

A trial by jury is demanded on all Counts and defenses.

KIYOKO LERNER

By: /s/ David W. Hepplewhite
Her Attorney

David W. Hepplewhite
David W. Hepplewhite, P.C.
70 West Madison Street, Suite 5650, Chicago, Illinois 60602-5046
312-782-7500, dwhpc@hepplewhitelaw.com

Kiyoko Lerner
849 W. Webster
Chicago, IL 60614

14 June, 1999

Kiyoko:

I am sorry for the delay in responding to your request for a letter detailing my last meeting with Henry Darger. As you know I didn't keep a record of the dates involved and can only speak to the sequence of events as I remember they occurred.

Henry was in the hospital. Alexian Brothers, I believe. I went to see him because he was dying and I wanted to offer him some contact and support. It is my belief that Nathan had informed me of his condition and suggested that Henry would not be around for much longer. It seemed to be a Sunday afternoon. This is what followed as best I remember it.

I walked into a darkened room, what little light there was came from the hallway. The form of Henry could be made out of lying on his back with his hands at his side. He was resting with his eyes closed. He appeared so different, washed and clean, lying on crisp white sheets. He responded to his name and turned his head to face me. Most of the general conversation was initiated by myself with Henry giving short, soft responses. At some point I got around to talking about his room and its contents. I told him we were cleaning it and came across some paintings, that I couldn't bring myself to throw out. The change in Henry was immediate; his eyes widened, he took a deep breath, paused for a moment and said "Its too late now," then softly, "they belong to Mr. Lerner." With this he turned away and the continuation of any conversation seemed pointless. That was the last I saw of Henry.

Why did some of these things seem so important to me? I was dealing with the death of my father who had recently died. He had worked all of his life. Shortly after he retired he had a heart attack and died. I was working on the remembrance of people by their accomplishments and failures, and the importance of maintaining that memory enriching our lives. The discovery of a life's work by Henry Darger was amazing and its disposition was not something I regarded lightly.

David S. Berglund
2444 Wyoming St. APT D
Dayton, OH 45410

PS I have been recovering from major surgery on my left leg, and a trip to Michigan was used to assess my ability to walk. I can now walk a mile - my goal is 2 miles.

LEE HOHL, ATTORNEY
Notary Public, State Of Ohio
My Commission Has No Expiration
Section 147.03 O.R.C.

**Exhibit A**

# CERTIFICATE OF REGISTRATION



**UNITED STATES COPYRIGHT OFFICE ★ THE LIBRARY OF CONGRESS ★**

OFFICIAL SEAL

This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below.The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

REGISTER OF COPYRIGHTS
*United States of America*

# FORM TX
**For a Literary Work**
UNITED STATES COPYRIGHT OFFICE

TXu 810-328



EFFECTIVE DATE OF REGISTRATION

JUNE     09     1997
Month     Day     Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

## 1

**TITLE OF THIS WORK ▼**

The History of My Life

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.    **Title of Collective Work ▼**

If published in a periodical or serial give:   Volume ▼     Number ▼     Issue Date ▼     On Pages ▼

## 2

**a**   **NAME OF AUTHOR ▼**

Henry Joseph Darger

**DATES OF BIRTH AND DEATH**
Year Born ▼   1892     Year Died ▼   1973

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ _____
     Domiciled in ▶ USA

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼     Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ _____
     Domiciled in ▶ _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼     Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ _____
     Domiciled in ▶ _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

## 3

**a**   **YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED**
1972   ◀ Year
This information must be given in all cases.

**b**   **DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK**
Complete this information ONLY if this work has been published.
Month ▶ _____ Day ▶ _____ Year ▶ _____   ◀ Nation

## 4

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Kiyoko Asai Lerner
849 W. Webster
Chicago, IL 60614

See instructions before completing this space.

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

By assignment

**APPLICATION RECEIVED**
JUN 09 1997
**ONE DEPOSIT RECEIVED**
JUN 09 1997 *
**TWO DEPOSITS RECEIVED**

**FUNDS RECEIVED**

DO NOT WRITE HERE
OFFICE USE ONLY

---

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-11) on the reverse side of this page.
• See detailed instructions.    • Sign the form at line 10.

**DO NOT WRITE HERE**
Page 1 of ___ 2

*Exhibit A-1*

**\*Special Relief granted under Sec. 202.20 (d) of the C.O. Reg.**

| EXAMINED BY | AJH | FORM TX |
|---|---|---|
| CHECKED BY | | |

| CORRESPONDENCE ☒ Yes | FOR COPYRIGHT OFFICE USE ONLY |
|---|---|

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes ☒ No If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▼          Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.

a. Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

b. Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**6**

See instructions before completing this space.

—space deleted—

**7**

**REPRODUCTION FOR USE OF BLIND OR PHYSICALLY HANDICAPPED INDIVIDUALS** A signature on this form at space 10 and a check in one of the boxes here in space 8 constitutes a non-exclusive grant of permission to the Library of Congress to reproduce and distribute solely for the blind and physically handicapped and under the conditions and limitations prescribed by the regulations of the Copyright Office: (1) copies of the work identified in space 1 of this application in Braille (or similar tactile symbols); or (2) phonorecords embodying a fixation of a reading of that work; or (3) both.

a ☐ Copies and Phonorecords          b ☐ Copies Only          c ☐ Phonorecords Only

**8**

See instructions.

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name ▼          Account Number ▼

**9**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼

Kirkland & Ellis

Attn: Donna Gasiorowski
200 E. Randolph, Chicago, IL 60601

Area Code and Telephone Number ▶ (312) 861-2321

Be sure to give your daytime phone number ◀

**CERTIFICATION\*** I, the undersigned, hereby certify that I am the

Check only one ▶

☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of          Kiyoko Asai Lerner

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**10**

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Pamela A. Kilby                    date ▶ 6/5/97

✍ Handwritten signature (X) ▼          *Pamela A. Kilby*

| MAIL CERTIFICATE TO | Name ▼ Donna Gasiorowski, c/o Kirkland & Ellis | YOU MUST • Complete all necessary spaces • Sign your application in space 10 |
|---|---|---|

Number/Street/Apartment Number ▼
200 E. Randolph Drive

Certificate will be mailed in window envelope

City/State/ZIP ▼
Chicago, IL 60601

SEND ALL 3 ELEMENTS IN THE SAME PACKAGE
1. Application form
2. Nonrefundable $20 filing fee in check or money order payable to Register of Copyrights
3. Deposit material

MAIL TO
Register of Copyrights
Library of Congress
Washington, D.C. 20559-6000

The Copyright Office has the authority to adjust fees at 5-year intervals, based on changes in the Consumer Price Index. The next adjustment is due in 1996. Please contact the Copyright Office after July 1995 to determine the actual fee schedule.

**11**

\*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

*Exhibit A-2*

## CERTIFICATE OF SERVICE

I, David W. Hepplewhite, certify that this Answer & Affirmative Defenses was filed with the court's CM/ECF system on April 18, 2023.

/s/ David W. Hepplewhite
Attorney For Plaintiffs