# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Estate of Henry Joseph Darger,<br>   Plaintiff,<br><br>   v.<br><br>Kiyoko Lerner, individually, and as executor of The Estate of Nathan Lerner, and as trustee of any trust established by Nathan Lerner, and The Nathan and Kiyoko Lerner Foundation,<br>   Defendants. | Civil Action No.: 1:22-cv-03911<br><br>Honorable Thomas M. Durkin<br>Honorable Sheila M. Finnegan |

## STIPULATED JOINT PROTOCOL GOVERNING DISCOVERY OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

  Plaintiff, ("The Estate"), by its undersigned counsel and with agreement of Defendant Kiyoko Lerner ("Lerner") (collectively, the "Parties") (Plaintiff and Defendant, each individually a "Party," and collectively, the "Parties"), through their attorneys, have stipulated and agreed to the entry of an Order Establishing Protocol for Document Collection and Production (the "Protocol") governing the discovery, collection, and production of documents, including electronically-stored information ("ESI"), in the above-captioned litigation (the "Action").

  This Protocol is intended to supplement the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Northern District of Illinois. The Parties mutually seek to reduce the time, expense, and other burdens of discovery of certain hard copy documents and ESI, and to better define the scope of their obligation with respect to producing such information and materials. This Protocol is intended to promote a "just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1. This Protocol does not prevent the Parties from negotiating additional agreements regarding discovery as may be necessary in the course of this Action. This Protocol is not intended to expand any document storage, preservation, or production

1

requirement beyond the common law or the Federal Rules of Civil Procedure or to limit any protections otherwise available to a Party under the common law, the Federal Rules of Civil Procedure, or the Federal Rules of Evidence.

The Court, having reviewed the agreement and stipulations of the Parties, finds that good cause supports the entry of this Protocol, and that justice so requires.

Accordingly, pursuant to Rule 26 of the Federal Rules of Civil Procedure, it is hereby ORDERED that all the discovery, collection, and production of documents or ESI in this Action shall be subject to the terms and provisions set forth below.

I. **SCOPE**

    A. This Discovery Plan shall govern the production of documents and electronically stored information ("ESI") as described in Federal Rules of Civil Procedure 26, 33, and 34.

    B. The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter.

    C. **Objecting to ESI Discovery.** The Parties reserve the right to object to discovery as provided by the Code, the Rules, and/or the Local Rules. All objections based on undue burden or costs will be stated with particularity and supported by specific facts.

II. **PRESERVATION AND COLLECTION**

    A. **Custodians**.

Plaintiff and Defendants agree to preserve and collect data pursuant to this Discovery Plan for Custodians as mutually agreed upon by the parties.

B. **Data Sources.**  The Parties agree that they will preserve and collect ESI from any and all data sources that may contain relevant data including but not limited to:

1. E-Mail and corresponding attachments

2. Hard Drives (Internal or External)

3. Network File Servers

4. Cloud-Based Storage

5.

C. **Not Reasonably Accessible ESI.**  The Parties agree that the circumstances of this Action do not warrant the preservation, collection, review, production, or identification on a privilege log of ESI that is not reasonably accessible, unless the Party producing discovery (the "Producing Party") believes in good faith that not reasonably accessible ESI is likely to contain significant relevant information not otherwise available in reasonably accessible sources or if the Party requesting the data ("Requesting Party") can establish a particularized need for the data as established by the facts and legal issues of the case.  For purposes of this Paragraph, the Parties agree that the following sources of ESI are not reasonably accessible and subject to the preceding: Data stored in a backup system for the purpose of system recovery or information recovery if it is substantially duplicative of data that is more accessible elsewhere, including but not limited to: disaster recovery backup tapes and media; continuity of operations systems; and data or system mirrors or shadows.

1. Voicemail recordings.

2. Legacy Data.

3. Deleted, erased, or overwritten computer files, whether fragmented or whole, which were deleted in the regular course of business.

4. Data stored in Random Access Memory ("RAM"), cache memory, or in temporary or cache files, including internet history, web browser cache, and cookie files, wherever located.

5. Encrypted data/password protected files, where the key or password cannot be ascertained absent extraordinary efforts.

6. Data stored on printers, photocopiers, scanners, and fax machines.

7. Data stored as server, system, or network logs.

Nothing in this Protocol prevents any Party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of ESI are not reasonably accessible within the meaning of Rule 26(b)(2)(B).

    **D.** **Search Methodologies.** If the Producing Party wishes to use a search methodology(ies) to cull collected ESI or documents for review or production, the Producing Party and the Requesting Party will confer regarding such search methodology(ies) and search terms beforehand.

    **E.** The Parties shall meet and confer about any other technology or process that may be appropriate to streamline discovery consistent with the objectives of Rule 1 of the Federal Rules of Civil Procedure including analytics or Technology Assisted Review.

**III.**     **ESI PRODUCTION SPECIFICATIONS**

    **A.** **Production Formats & Metadata**. The Parties agree to produce ESI in the format described in Appendix I. In addition, the Parties agree to negotiate the production format of text messages and instant messages if the collection or data source requires a format different than described in Appendix I.

    **B.** **De-Duplication.** To the extent identical copies of ESI exist in a Producing Party's files, the Producing Party need only produce one such identical copy. Each Producing party may

remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. Near-duplicate documents shall not be removed without prior agreement of the Parties. If global de-duplication is done across the entire collection, the "All Custodians" metadata field will list each agreed production custodian, separated by a semi-colon, who was the source of that document.

   C. **De-NISTing**. The Parties do not need to produce common system files defined by the NIST library (http://www.nsrl.nist.gov/).

   D. **Zero-byte Files.** The Parties may filter out files identified as zero bytes in size and any logo files.

   E. **Embedded Objects.** Embedded objects or files such as Excel spreadsheets, Word documents, or audio and video files, shall be extracted and searched consistent with its category of ESI. Non-substantive embedded files, such as logos, need not be extracted. All embedded files produced under this procedure shall be produced subject to the same requirements set forth in this Protocol. For production purposes, embedded files shall be identified as attachments to the parent document in which the file was embedded, and load files for such embedded files shall refer to the parent document in which the file was embedded.

### IV. HARD COPY PRODUCTION SPECIFICATIONS

   A. **Unitization**. In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*,

paper documents should be logically unitized[1]). In the case of an organized compilation of separate documents – for example, a binder containing several separate documents behind numbered tabs – the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize the documents correctly.

      **B.**    **Production Formats.** If hard copy documents and attachments are to be scanned, they should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following information: Custodian(s); Begin Bates; End Bates, BegAttach (parent/child order); EndAttach (parent/child order);; File Name (if available); Folder Name (if available); Confidential Designation; OCR Text Path; and Production Volume.

      Multi-page OCR text for each document will also be provided. OCR text files shall be provided as a single text file for each hard copy document, not one text file per page. The File Name itself should be named after its Begin Bates and match its respective TIFF or JPG File Name. The OCR software shall maximize text quality. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process. Notwithstanding the requirements set forth above, absent a showing of good cause, a Producing Party is not obligated to re-scan and re-process hard copy documents that were scanned before the entry of this Protocol.

---

[1] Logical Unitization is the process of human review of each individual page in an image collection using logical cues to determine pages that belong together as documents. Such cues can be consecutive page numbering, report titles, similar headers and footers and other logical indicators. *See* The Sedona Conference Glossary, cited at note 2 *supra*.

**V.     COSTS**

This Discovery Plan shall have no effect on any Producing Party's right to seek reimbursement for costs associated with collection, review, or production of documents or ESI.

**VI.    OTHER**

   A.   **Objections**.  Nothing in this Discovery Plan shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity.  The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI.

   B.   **Waiver Of Privilege.**  The production of privileged or work-product related documents, ESI or other information, whether inadvertent or otherwise, is not a waiver of the privilege protection from discovery in this action or in any other federal or state proceeding. This protocol document shall be interpreted to provide the maximum protection allowed by the Federal Rule of Evidence 502 or other applicable rules and shall be enforceable and granted full faith and credit in all other state and federal proceedings by 28 U.S.C. § 1738. In the event of any subsequent conflict of law, the law that is most protective of privilege and work product shall apply. Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI, or information (including metadata) for relevance, responsiveness, and/or segregation of privileged and/or protected information before production. Further, the reasonableness requirement of Rule 502(b) [or applicable rule] is "presumed satisfied."

   C.   **English Language.**  To the extent any document exists in more than one language, the document shall be produced in English, if available in the ordinary course of business or in the custodian's files.  If no English version of the document is available, the Producing Party does not have an obligation to produce an English translation.

**D.     Time Zone Standardization.**  The Parties acknowledge that if the processing time zone for this Action is not standardized across the entire collection, then the email metadata for custodians in the different time zones will be different, because the time (and possibly the date) would be different.  As a result, two copies of the same email may fail to be de-duplicated, and the different time zones could create a convoluted chronology.  As a result, to the extent reasonably practicable, the Parties agree to produce their ESI standardized to Coordinated Universal Time (UTC).

**E.     Privilege Log.**  The parties shall produce an appropriate privilege log covering the scope of all documents withheld in full or in part from any production **at the time such production is made**.  The privilege log shall identify for each withheld document or portion of document (or redaction): 1) the Bates or Privilege ID number; 2) the author(s); 3) all recipients (including all cc or bcc recipients; 4) description of the type of document (i.e., memo, email, chart, etc.); 5) the basis of any claimed privileged/immunity.  The Producing Party shall also provide a list identifying all whose authorship or receipt of the document(s) in question allegedly supports any claim of privilege or immunity, identifying such individuals by name, employer, and relationship to the Producing Party.

**Appendix I: ESI Production Specifications**

ESI Productions shall be conformed as follows**:**

ESI productions require the data to be produced as images, text files, and a load file as detailed below, with native files provided for discrete data types.

Each container file, such as an email PST or NSF or file containers such as a ZIP file or RAR file, shall be extracted.  Each email attachment is to be extracted from the parent email as a

separate document. The parent/child relationship between email and attachment is to be maintained.

Accordingly, please produce the following for each record:

1)	Deliverable Format

Each production volume should have separate NATIVE, IMAGE and TEXT sub-folders for the native, image and text files, and shall contain no more than 5,000 files per numbered sub-folder. The Volume folder will contain the data file. The data file will be named for the production volume and will have the .DAT file extension. The volume folder will contain a Concordance Image (Opticon) image load file with either the .opt or .log file extension. The image load file will be named for the production volume.

2)	Document Images

All documents or files are to be scanned or printed to CCIT Group IV, 300 DPI resolution, single-page, TIFF images or jpeg images, except for structured data, Microsoft Excel, and Microsoft PowerPoint files, which shall be produced in native format unless such materials contain privileged or redacted information. If a file slated to be produced natively contains privileged or redacted information, the parties will produce TIFF versions of the document. In the interest of reducing overall production page counts, redacted native files will also be accepted. Each image is to be endorsed in the lower right hand corner with a unique serial ("Bates") number. The Bates number shall not obscure any information in the image. Any confidentiality designation should appear in the lower left hand corner of each image.

3)	Text Files

A single, document-level, Unicode text file is to be produced for each record. Text files should be named with the Bates number of the first page of the document. In the case of a file where the text is electronically extractable, the text file shall contain the electronically extracted text. For files where the text of the document is not electronically extractable, the file shall be imaged and then processed using optical character recognition (OCR). The text from a slip sheet should not be provided in the text file.

4)	Native Electronic Files

Native format means the format in which the data was originally created. Native electronic files are to be produced for structured data (e.g., non-renderable data such as media files and those that are not conducive to accurate or efficient TIFFing), Microsoft Excel and associated spreadsheet formats (e.g., csv), Microsoft PowerPoint files, and technical drawings (CAD). Each native file is to be assigned a single Bates number corresponding to the beginning Bates number of the document, and an associated TIFF placeholder should be inserted in the set of produced images. The placeholder should adhere to the Bates and confidentiality endorsing requirements noted above. The placeholder shall state the following: "Document Produced in Native Format." Extracted text shall be provided for each native file. A link to each native file shall be provided in

the "Native File Path" field of the .DAT file. Database files should not be produced in native form. Parties agree to meet and confer on the form of production of data from databases.

5) <u>Concordance Load File</u>

A Concordance .DAT file should be produced containing document boundaries, attachment (parent/child) relationship, and metadata fields corresponding to those listed below (to the extent those fields exist and are available). The metadata field names should appear in the first line of the .DAT file. Each file produced should have a corresponding record (row) in the data file.

| **Metadata Fields:** | **Description:** |
| --- | --- |
| Bates Beg | The Bates number or file identification number of the start of the document. |
| Bates End | The Bates number or file identification number of the end of the document. |
| Bates Beg Attach | The beginning Bates number or file identification number of the first document in the parent/attachment group. |
| Bates End Attach | The ending Bates number or file identification number of the last document in the parent/attachment group. |
| Email To | The recipient of the document or email. |
| Email From | The sender of the email. |
| Email CC | Persons copied on the document or email. |
| Email BCC | Persons blind-copied on the document or email. |
| Custodian | The person who maintains custody of the document or email. |
| All Custodians | Semi-colon delimited list of all custodians with custody of the file within the collected data set. |
| File Extension | The original extension of the file. |
| Author | The author of the document. |
| Date/Time Created | Date the document or email was created. Formatted in a single field as mm/dd/yyyy 6:24 PM. |
| Date/Time Sent | Date the document or email was sent. Formatted in a single field as mm/dd/yyyy 6:24 PM. |
| Date/Time Received | Date the document or email was received. Formatted in a single field as mm/dd/yyyy 6:24 PM. |

| | |
|---|---|
| Date/Time Last Modified | Date last modified for attachments and standalone files. Formatted in a single field as mm/dd/yyyy 6:24 PM. |
| Date Last Printed | Date last printed for attachments and standalone files. |
| Email Subject | The subject line(s) of the email. |
| File Name | File name of the electronic document. |
| Original Folder Path | Original file path as maintained by the operating system or network. |
| Folder Name | Email or document folder information. |
| MD5, SHA-1, or SHA-1 Hash | The identifying value used for deduplication and authentication. |
| Processing Time Zone | The standardized time zone used for processing. |
| Confidential Designation | Designation of any confidentiality claim applied to the document. |
| Native File Path | File path to location of native format document. |
| Text Path | File path to extracted text (or OCR in the case of redacted images) of the document. |

6) <u>Concordance Image (Opticon) Compatible Image Load File</u>

Produce an Opticon .OPT or .LOG page level load file with each line representing one image, containing the following comma delimited fields:

Page Identifier, VOLUME Identifier, IMAGE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT

**IT IS SO ORDERED.**

**Date:** 8/3/2023

*Sheila Finnegan*

**Sheila M. Finnegan**
**U.S MAGISTRATE JUDGE**

**APPROVED AND AGREED:**

| ESTATE OF HENRY JOSEPH DARGER | KIYOKO LERNER |
|---|---|
| By: /s/ Marcus S. Harris<br>Its Attorney<br><br>Marcus S. Harris<br>TAFT STETTINIUS & HOLLISTER LLP<br>111 East Wacker, Suite 2600<br>Chicago, IL 60601<br>T: (312) 527-4000<br>F: (312) 527-4011<br>mharris@taftlaw.com | By: /s/ David W. Hepplewhite<br>Her Attorney<br><br>David W. Hepplewhite<br>David W. Hepplewhite, P.C.<br>70 West Madison Street, Suite 5650,<br>Chicago, Illinois 60602-5046<br>312-782-7500<br>dwhpc@hepplewhitelaw.com |