UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ESTATE OF HENRY JOSEPH DARGER,<br><br>          Plaintiff,<br><br>    v.<br><br>KIYOKO LERNER, INDIVIDUALLY, AND AS EXECUTOR OF THE ESTATE OF NATHAN LERNER, AND AS TRUSTEE OF ANY TRUST ESTABLISHED BY NATHAN LERNER, AND THE NATHAN AND KIYOKO LERNER FOUNDATION,<br><br>          Defendants. | No. 22 C 03911<br><br>Judge Thomas M. Durkin |

## MEMORANDUM OPINION AND ORDER

The Estate of Henry Joseph Darger (the "Estate") is seeking to claim copyrights in the work of artist and author Henry Darger ("Darger") that the Estate alleges were wrongfully claimed for decades by Darger's landlords, Nathan and Kiyoko Lerner. The Estate now sues Kiyoko Lerner ("Kiyoko") and various entities associated with her[1] (collectively, "Defendants") for copyright and trademark infringement, unfair competition under the Lanham Act and common law, false designation of origin, cybersquatting, and deceptive trade practices. Defendants have filed an answer to the Complaint, along with affirmative defenses, including the doctrine of unclean hands. Plaintiff now files a motion to strike Defendant's unclean

---

[1] Upon Nathan Lerner's death, Kiyoko Lerner became the executor of his estate and the trustee of any trust established by him. *Id.* ¶ 39. The Nathan and Kiyoko Lerner Foundation, a business entity that has Kiyoko as its owner and sole member, makes profits from selling Darger's works. *Id.* ¶ 38.

1

hands affirmative defense pursuant to Fed. R. Civ. P. 12(f). R. 32. For the following reasons, that motion is granted.

## Background

Henry Joseph Darger, a prolific artist who posthumously became emblematic of the "outsider art" movement, died intestate in 1973 in Chicago, Illinois. R. 1 ¶¶ 2–3. The Lerners were Darger's landlords from approximately 1960 to 1973. *Id.* ¶ 4. From Darger's death until present, Defendants have identified themselves as the copyright owners in Darger's artistic works and sold and licensed his works. *Id.* ¶ 6. The Estate, now represented by one of Darger's relatives, has sued Defendants, alleging that they used false pretenses to claim Darger gifted them his works, and that Kiyoko incorrectly claims ownership. *Id.* ¶¶ 7–9, 16. As a result, the Estate alleges Defendants have been wrongfully and in bad faith reaping profits from Darger's name and affiliated works. *Id.* ¶¶ 14–15. Defendants moved to dismiss for failure to state a claim, which this Court denied. R. 25.

Defendants then filed an answer along with affirmative defenses, including unclean hands, abandonment, "equitable claim," statutes of limitations, and laches. R. 31. Defendants claim that they sent the Estate two affidavits—one from Mr. David S. Berglund, a neighbor of Darger's,[2] and one from Kiyoko—in which each attest that they witnessed Darger state, prior to his death, that he was gifting his works to Nathan, Kiyoko's late husband. Defendants allege that they therefore requested the

---

[2] Defendants' answer spells it "Bergland," but the affidavit itself reveals that it is spelled "Berglund." R. 38-1 at 9.

2

Estate withdraw the allegations in the Complaint that Defendants had or have a bad faith intent to claim ownership in the copyrights and/or acted "falsely and deceptively." *See* R. 1 ¶¶ 97, 108. Defendants claim the Estate made these allegations without evidentiary support, in the face of contradictory affidavits, and allegedly with the knowledge that the Lerners relied in good faith on the advice of the law firm Kirkland & Ellis for issues of copyright ownership. Defendants also requested the Estate "produce each statement of Henry Darger about and of each person who spoke with Mr. Darger about ownership of his art materials, including copyright and other intellectual-property rights, and other admissible evidence of the current ownership of his art and materials, including copyright and other intellectual-property rights." R 31 at 10, ¶¶ 5–6. Defendants claim the Estate and its counsel have unclean hands because they chose to continue to pursue the allegations of bad faith intent without a reasonable basis.

## Discussion

Plaintiff now files a motion to strike Defendants' unclean hands affirmative defense because the filing of a lawsuit cannot itself constitute a basis for an unclean hands defense. A Rule 12(f) motion to strike allows the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). As motions to strike can "potentially serve only to delay," affirmative defenses are stricken "only when they are insufficient on the face of the pleadings." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th

3

Cir. 1989). Affirmative defenses are therefore subject to the pleading requirements of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(c), 9(b).

The unclean hands doctrine "precludes a party from taking advantage of his own wrong." *Coexist Found., Inc. v. Fehrenbacher*, 865 F.3d 901, 908 (7th Cir. 2017). The mere fact that a party's conduct could be considered unprincipled is not enough. Rather, the unclean hands doctrine requires the conduct be "tainted with the inequitableness or bad faith relative to the matter in which he seeks relief." *Zeidler v. A & W Restaurants, Inc.*, 71 F. App'x 595, 599 (7th Cir. 2003) (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)). A court is given a "wide range" of discretion under this doctrine and the alleged misconduct "need not necessarily [be] of such a nature as to be punishable as a crime." *Packers Trading Co. v. Commodity Futures Trading Comm'n*, 972 F.2d 144, 148–149 (7th Cir. 1992) (quoting *Precision Instrument Mfg. Co.* 324 U.S. at 815). At the pleading stage, a defendant merely needs to allege a plaintiff engaged in "fraud, unconscionability, or bad faith" directed at the defendant, and that the misconduct pertains to the subject matter of the lawsuit and affects the "equitable relations between the litigants." *Int'l Union, Allied Indus. Workers of Am., v. Local Union No. 589, Allied Indus. Workers of Am.*, 693 F.2d 666, 672 (7th Cir. 1982).

Defendants' unclean hands defense is based entirely on Plaintiff's decision to "continue to pursue the Complaint[ ] . . . and to file and to pursue a response to Ms. Lerner's motion to dismiss" allegedly without a reasonable basis. R. 31 at 13, ¶¶ 21–22. The problem is that "[t]he unfair or improper filing of a trademark infringement

4

lawsuit cannot itself constitute a basis for an unclean hands defense to that lawsuit." *Maui Jim, Inc. v. SmartBuy Guru Enterprises*, 386 F. Supp. 3d 926, 957 (N.D. Ill. 2019) (quoting 6 McCarthy on Trademarks § 31:51 (5th ed. Mar. 2019)) (striking affirmative defense of unclean hands based on prosecution of trademark infringement and unfair competition lawsuit allegedly undertaken in bad faith); *see also Myers v. Harold*, 279 F. Supp. 3d 778, 798 (N.D. Ill. 2017) (allegations that a plaintiff filed a "frivolous" copyright infringement lawsuit did not support unclean hands affirmative defense). The reason the pursuit of a lawsuit itself cannot be the basis for an unclean hands defense is that it does not relate to the underlying subject matter of the lawsuit. *Maui Jim*, 386 F. Supp. 3d at 957 (quoting 6 McCarthy on Trademarks § 31:51); *Ty, Inc. v. Publ'n Int'l, Ltd.*, No. 99 C 5565, 2004 WL 1588256, at *1–2 (N.D. Ill. July 16, 2004); *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 429 (S.D.N.Y. 2010) ("Filing a trademark or trade dress infringement lawsuit, therefore, cannot be a basis for an unclean hands defense to that lawsuit because any bad faith or inequitable conduct in filing the lawsuit is unrelated to the plaintiff's acquisition or use of the trademark or trade dress rights.").

Defendants' primary argument in response is that its unclean hands defense is not aimed at the filing of the lawsuit or the entire Complaint, but only at Plaintiff's refusal to withdraw a portion of the Complaint—that alleging intentional misconduct by Defendants. But Defendants contradict themselves by later stating in their brief that their unclean hands defense applies to the entire Complaint. R. 36 at 10 (arguing that the unclean hands defense "cannot be stricken because it remains applicable to

5

the [non-trademark- or copyright-based claims], Counts III, IV, VI, VII, IX,"). The affirmative defense cannot both be limited to a small portion of the Complaint and applicable to all counts. Further, the affirmative defense itself states that Plaintiff has unclean hands because of its decision to "continue to pursue the Complaint" as a whole, R. 31 at 13, ¶¶ 21–22, which falls squarely under *Maui Jim*. 386 F. Supp. 3d at 957.

But even if Defendants' unclean hands defense were limited only to Plaintiff's bad faith allegations against Defendants, this is a distinction without substance. It matters not whether Plaintiff pursued the *entire* Complaint without a reasonable basis or pursued *part* of the Complaint without a reasonable basis because both are unrelated to the "matter in which [Plaintiff] seeks relief"—here, the ownership of the rights to Darger's works. *Packers Trading*, 972 F.2d at 148 (quoting *Precision Instrument*, 324 U.S. at 814–15).

Defendants cite the Seventh Circuit's ruling in *Packers Trading*, 972 F.2d at 148–49, as holding that misconduct supporting an unclean hands defense does not have to be "directly associated with the particular transaction." That much is true, but the Seventh Circuit in that case clarified that, for unclean hands to be a valid defense, the party still must have acted unfairly or fraudulently "in the controversy at issue." *Id.* (quoting *Precision Instrument*, 324 U.S. at 814–15 (The equitable doctrine of unclean hands "does require that [plaintiffs] shall have acted fairly and without fraud or deceit as to the controversy in issue.")). For example, in that case, the court upheld the application of unclean hands to bar a commodities trader from

6

damages in a reparation action because when he made the trades at issue, he was banned from trading and attempted to take advantage of a brokerage firm's mistake in making trades. 972 F.2d at 148–49. Though the trader's misconduct was not necessarily directed to the exact transaction in the reparations action, it was part of a greater scheme of "bad faith relative to the matter in which he s[ought] relief." *Id.* at 149. In other words, the court still found the commodities trader's unclean hands were related to the underlying subject matter of the suit. *Id.* Here, Defendants can make no such argument. The refusal to drop certain allegations from a lawsuit is simply unrelated to who owns the rights to Darger's works.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to strike Defendants' unclean hands affirmative defense (R. 32) is granted.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: August 16, 2023