IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ESTATE OF HENRY JOSEPH DARGER, <br><br> Plaintiff, <br><br> v. <br><br> KIYOKO LERNER, individually and as Executor of the Estate of Nathan Lerner, and as trustee of any trust established by Nathan Lerner, and The Nathan and Kiyoko Lerner Foundation. <br><br> Defendants. | 22 CV 3911 <br><br><br> HON. THOMAS M. DURKIN <br> HON. SHEILA M. FINNEGAN |

**REPLY IN SUPPORT OF
MOTION FOR ADDITIONAL DISCOVERY**

Kiyoko Lerner, individually, a defendant, states the following in support of her Motion For Additional Discovery.

The Estate objects to both requests for discovery separately and to the requests generally.

*I.     The Merits.*

   *A.     The Discovery Related To The Heirs Of Mr. Darger.*

The Estate argues against the discovery related to the heirs of Mr. Darger with the usual litany of discovery objections, Response Dkt. at 1, 3-4, and that the request is untimely, *id.* at 5-6.

   *1.     The Litany.*

Regarding the litany, most are unexplained conclusions. The court explained at the last hearing that explanations are required.

Other issues are explained below.

   *a.     Relevance Generally.*

It is unclear if the Estate's argument of lack of relevance is perfunctory or if the Estate does not understand. Ms. Lerner will take the Estate at its word and explain.

HeirSearch prepared a report about the heirs of Mr. Darger. The reporter appears to be the only person who has talked to all the living heirs. The heirs' knowledge of Mr. Darger and their knowledge of the knowledge of other, now-deceased heirs, relates to notice of Mr. Darger's art and the Estate's burden to prove filing this case within the applicable statute of limitations. One-or-more heirs could defeat the Estate's allegations and burden regarding the statute of limitations if they knew about Mr. Darger's art and did nothing.

Additionally, the report states for one heir that this heir never heard of Mr. Darger. This note, fairly, raises questions about the knowledge of the other heirs, which were set out within the Motion at 2, Dkt. 74. This information and these questions can lead to evidence about knowledge of the heirs. The the report saying nothing about this for the other heirs suggests that this heir's knowledge was different than the knowledge of others based on. The reporter will know. The notes and materials may resolve this as well.

Regarding the Estate's proportionality argument, Response at 4, Dkt. 79, of "minimal relevance," the Estate provides no explanation about provided why statute-of-limitations information is unimportant. Ms. Lerner disagrees and believes that this is important and relevant because it constitutes an element of the Estate's case.

     **b.**   ***Other Matters.***

Ms. Lerner proposed, first, a subpoena for and review of the notes and other materials before a deposition, to honor the requirement of proportionality: "Review of the materials first is the last-intrusive means of discovery." Motion at 2, Dkt. 73.

The Estate argues that knowledge of other heirs is irrelevant because it won a pleading

motion and did not have to identify all claimants.  Response at 4, Dkt. 79.

The argument suggests a misunderstanding of the difference between a pleading requirement and evidence.  Also, this argument conflicts with this court's order that the Estate respond to discovery related to identification of each claimants, each claimant's statements about Mr. Darger, and what each claimant knew about Mr. Darger and when did each learn it (interrogatory 8, 10; request to produce 9); order, Dkt. 71.

### 2. Timeliness.

The Estate argues that the time between production of the HeirSearch report and this request is too long.  Response at 5-6, Dkt. 79.

On one hand, this report (long, 46 pages) was produced on January 17, 2024, and the proposed discovery was raised at a meet-and-confer discussion March 6, 2024.  This is seven weeks after production.  This would be an unfair standard for untimeliness.  Also, Ms. Lerner's counsel hoped to raise the issue only five weeks later at the February 21, 2024 hearing but could not, as discussed in the Motion, at 2-3, Dkt. 74.  The two-week difference included the time required to schedule the March 6, 2024 discussion.

On another hand, the Estate argues that Ms. Lerner's counsel should have know about the report earlier because it was in the Probate file and because Ms. Lerner's counsel appeared a hearing.  Motion at 5, Dkt. 79.  Counsel did not know.  Counsel's requests for the report, starting in at least October, provide objective evidence that counsel did not know.  Also, counsel was not involved inmost of the Probate disagreements, substituting at the end of the disagreements.

### B. The Discovery Related To Knowledge Of Mr. Darger's Art Before His Death.

The litany, *id.* at 1, may apply to the proposed interrogatory to identify the Estate's knowledge of the people who saw Mr. Darger's art before his death.  If so, the same lack of

3

explanations apply.

Ms. Lerner will take the Estate at its word that it does not understand the relevance. Also, the Motion recites, Motion at 5, Dkt. 74, and the Estate chooses not to discuss, that the proposed interrogatory is only "narrow follow-up discovery" within the scope of the court's earlier order, Dkt. 71.

As to relevance, the basic law is that the value is determined at the time of any alleged conversion and that valuation of something includes the value of peoples' efforts thereafter. Here, "[a]s an artist, Darger was virtually unknown during his lifetime." Complaint, Dkt. 1, ¶ 3. The Estate has admitted that Mr. & Mrs. Lerner "organized and authored large scale exhibitions of Henry Darger, Jr.'s art materials" and denied that "Henry Darger, Jr.'s art materials were <u>kept in his room and</u> never exhibited or publicized before his death. Dkt. 66-1 (requests for admissions 4 and 5) (underline in original). The objections to request 6, at issue here, were sustained. The requests and responses at issue are, *id.* (strikeout and underline in original):

> **REQUEST FOR ADMISSION NO. 4:** Kiyoko Lerner and Nathan ~~Nathan~~ Lerner organized and authorized large scale exhibitions of Henry Darger, Jr.'s art materials in museums and galleries after his death.
> **ANSWER:** Plaintiff admits that the Lerners organized and authored large scale exhibitions of Henry Darger, Jr's art materials, but denies that they had any right or authorization to do so.
>
> **REQUEST FOR ADMISSION NO. 5:** Henry Darger, Jr.'s art materials were <u>kept in his room and</u> never exhibited or publicized before his death.
> **ANSWER:** Denied.
>
> **REQUEST FOR ADMISSION NO. 6:** No one other than Henry Darger, Jr., Nathan Lerner, Kiyoko Lerner, David Bergl~~a~~und<u>, and some of Mr. Darger's neighbors</u> knew about or had seen Mr. Darger's art materials before Mr. Darger's death.
> **ANSWER:** Plaintiff objects to this Request on the ground that the term "Mr. Darger's neighbors" is vague, overly broad, unduly burdensome and unclear, because it includes unidentified individuals, would require Plaintiff to ascertain all of these individuals, and provides no indication as to the meaning or geographical limit of people living "nearby his apartment building." Because

of these objections, Plaintiff cannot admit or deny this Request.

The denial of request 5, concerning the materials being in the room and never exhibited or publicized raises the additional issue of who saw the art materials and where did they see them. This dovetails with request 6, asking if only the specified people saw the art and the allegations "virtually unknown" within the Complaint.

The denial of request 5 and the objection to request 6 had to have had bases. The bases go to who had knowledge of Mr. Darger's art before his death. This knowledge goes to the proof of this value and is necessary here because of the denial of request 5 and the objection to request 6. The efforts of Mr. and Mrs. Lerner to create "large scale exhibitions" also go to value. The more that is attributable to their efforts, the smaller the value at Mr. Darger's death. Furthermore, the Estate's statement in its Plaintiff's Response To Defendants' Motion To Dismiss, Dkt. 23, at 2, increases the need for the interrogatory and clarity:

> Though Henry Darger's works were never exhibited, published, or commercialized during his lifetime, Darger has attained significant posthumous acclaim and renown. . . .

Into this scenario comes the requested interrogatory. Ms. Lerner retains the right to know who the Estate asserts saw the art before Mr. Darger's death because it is a major element of valuation. She fairly assumed, based on the Estate's comment about "neighbors," Motion at 3, Dkt. 74, that request 6 would be admitted and preclude the need for proof. Request 6 was not admitted. In the context of the denial of request 5, the objection and denial to request 6 open the issue of who saw the art before his death and where. This is how the interrogatory answer relates to value.

The answer to the interrogatory also will clear up the apparent conflict about "exhibited" created by the statement of the Estate in its Response that is cited above. Does "exhibited" mean

5

only in galleries and museums or also to others, and if so who and where.

The Estate argues a red herring, that the interrogatory asks it to "speculate." Response at 5, Dkt. 79. If it doesn't know anyone, it can answer – in conformity to its statement in the Response: "In any event and notwithstanding these objections, <u>there is no individual that the Estate would identify in response to items 2(a) and 2(b)</u>." *Id.* (emphasis added).

The second issue is if this is "narrow follow up discovery" within the context of the order. Dkt. 71. Ms. Lerner's counsel could fairly believe that this identification was the subject of the requests to admit and that this interrogatory is the follow up to the objection and denials. This belief is not a *post hoc* rationalization Motion at 1, Dkt. 73:

> Ms. Lerner asks for leave for both types of discovery here even though she believes that the discovery related to the request to admit does not require leave under the order.

Beyond what constitutes a reasonable belief, the court knows what it meant, and Ms. Lerner asks the court to tell the parties.

The Estate did not address this issue.

## II. *Objections To The Requests Generally.*

Beyond the merits, the Estate argues that meet-and-confer rules were violated and that the requests for the discovery should be denied. Motion at 1-2, Dkt. 79.

The argument retains defects on two levels.

Before these defects are discussed, the real issue is and is now resolved – if this kind of food fight about who said what to whom will continue. It will not. Ms. Lerner's counsel now understands that handshakes and telephone calls are not enough here. Ms. Lerner counsel will document in the future.

The first defect is the conflict between the Estate's argument that no discussion about

6

some matters took place and its statements that counsel "expressed some reservations and asked for more information regarding the scope and purpose of any such subpoena, which Lerner did not provide. Nor did she make any reference to the other expansive discovery that she now seeks . . . ." Dkt. __. The Joint Status Report confirms the conflict. Dkt. 73.

    Second, this is not a violation of rules to meet and confer. A discussion did take place. The discussion was presented within the Motion. This is, at most, the failure of Ms. Lerner's counsel to make a second call or of the Estate's counsel to inform Ms. Lerner's counsel about his conclusions about the reservations after the Joint Status Report.

                                      KIYOKO LERNER

                              By:   /s/ David W. Hepplewhite
                                       Her Attorney

David W. Hepplewhite, David W. Hepplewhite, P.C.
70 West Madison Street, Suite 5650, Chicago, Illinois 60602-5046
312-782-7500, dwhpc@hepplewhitelaw.com

**CERTIFICATE OF SERVICE**

    I, David W. Hepplewhite, certify that this Reply in Support Of Motion For Additional Discovery was filed with the court's CM/ECF system on March 29, 2024.

                                            /s/ David W. Hepplewhite
                                              Attorney For Plaintiffs