**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ESTATE OF HENRY JOSEPH DARGER,

    Plaintiff,

    v.

KIYOKO LERNER, *et al*,

    Defendants.

No. 1:22−cv−03911

Judge Thomas M. Durkin

Magistrate Judge Laura K. McNally

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

<u>INTRODUCTION</u>

Defendant's Motion for Summary Judgment does not claim that the Estate cannot adduce the facts necessary to sustain any of its nine counts. Rather, the thrust of the Defendant's motion is that the Estate has no facts necessary to *disprove* the Defendant's conflicting assertions that Henry Darger either (a) abandoned all of his personal and intellectual property rights when he moved into the nursing home with the necessary assistance of both the Defendant and her husband or (b) expressly gave all of his rights to personal and intellectual property in a discussion with the Defendant's husband after Darger was admitted to the nursing home. As argued more fully below and in the Estate's Motion for Summary Judgment, the "evidence" upon which Defendant relies is not admissible and even if it were admissible it is insufficient for the Defendant to meet her burden of proof concerning both its gift and abandonment theories. To the contrary, the Estate's uncontested evidence demonstrates that Darger neither gave away or abandoned his property and the Lerners breached their legal duties, as landlords, to take formal action to properly claim the

1

property which they now allege was legally abandoned.[1]

As a secondary argument, Defendant urges that the Estate's claims are barred by the statute of limitations applicable to copyright and trademark infringement, violations of the Illinois Consumer Fraud and Deceptive Trade Practices Act and Illinois common law claims for unfair competition, conversion, and unjust enrichment. As argued more fully below, most of those claims involve tortious acts which continued *after* the filing of the Estate's Complaint and, in many cases, through the filing of the instant memorandum. Moreover, even if the continuing violation doctrine did not apply, the Estate's Rule 56.1(b)(3) Statement presents abundant facts supporting the application of the discovery rule as of August, 2019 when the Estate's Supervised Administrator learned of possible claims, retained counsel, and investigated such claims before filing the Complaint on July 27, 2022.

Finally, Defendant asserts that the Estate has no facts which could defeat her "laches" affirmative defense. However, Defendant fails to adduce any evidence either that (a) the Estate lacked due diligence after discovering its claims or (b) that she has suffered any prejudice as a result of any purported delay in bringing any claim. Defendant attacks the Estate for its conduct, while at the same time ignoring the active measures that she and her deceased husband took to conceal the claims from the heirs of Henry Darger – conduct which defeats any assertion of the laches defense through the equitable tolling and concealment doctrines.

---

[1] The parties actively dispute who bears the burden of proof and the evidentiary standard by which that burden must be met. As noted in the Estate's Rule 56.1(b)(2) Statement, the Defendant's assertion that the questions put to the Supervised Administrator during her deposition concerning which party bears the burden of proof with respect to the issues at bar was not and could not be construed to be an admission that the Estate lacks evidence outside the knowledge of the witness. The Estate's 56.1 Statements provide substantial evidence of all the facts and circumstances discovered in the case which counsel (and not the Supervised Administrator) is charged to collect and present.

<u>Summary of Relevant Facts</u>

The undisputed evidence which the Estate presents to this Court in its Rule 56.1 Statement of Facts and its Rule 56.1(b)(3) Statement of Additional Facts demonstrate that: (a) no known relatives of Henry Darger knew about him or his artwork prior to August, 2019; (b) the last known relative of the heirs and interested parties of the Estate to bear the name "Darger" was Anne Darger Klein who died in 1953 (20 years before Darger); (c) the Estate acted promptly to bring this suit within three years of discovering the possibility of such claims and roughly one month after the Probate Court appointed a Supervised Administrator and authorized suit; (d) the Defendant and her husband made minimal effort to trace Darger's family and actively dissuaded an art researcher from conducting research concerning Darger's family; (e) the Defendant's husband had access to a family bible that included the names of certain of Darger's relatives which Darger left in the rooming house, but that bible disappeared after the art researcher pointed it out to Nathan Lerner; (f) Defendant and her husband did nothing to document Darger's purported gift for more than 20 years after he died; (f) Defendant last converted/sold/deprived the Estate of Darger artwork in November, 2019; (g) the Defendant has continuously earned copyright licensing fees from Darger's creations; and (h) the Defendant has been actively and falsely representing that she was and is a representative of the Estate since at least 2000 and continues to do so on the internet.[2]

---

[2] Defendant's Memorandum in support of her Motion for Summary Judgment (Dkt # 155) at pp. 1-2, 10 & 11 contains purported facts which cannot be found in her Rule 56.1 Statement and lack factual support. The Estate respectfully urges the Court to ignore unsupported statements of fact and argument.

## ARGUMENT

**I.      The Defendant Has Insufficient Evidence to Meet its Burden of Proof on its Conflicting Claims of Gift and Abandonment.**

The Estate has largely addressed the questions concerning Darger's alleged "gift" or abandonment in own Motion for Summary Judgment and expressly incorporates the arguments asserted on pp. 5-11 of its supporting memorandum (Dkt # 151). In sum, as the alleged recipient of a gift (and as voluntary fiduciaries for Darger's benefit), the Defendant bears the burden to prove, by clear and convincing evidence, all of the elements of a gift (*i.e.,* donative intent and delivery). See Plaintiff Memo in Support of Summary Judgment, Dkt # 151, pp. 8-10. Notably, none of the hearsay "evidence" upon which Defendant relies came into existence until 1999, *i.e.,* 27 years after Darger died.

### A.      The One Purported Conversation Between Darger and Nathan Lerner.

Nathan Lerner is the person to whom Defendant claims Darger allegedly spoke directly concerning the disposition of his personal property in a nursing home sometime between Darger's move to the nursing home in December, 1972 and his death in April, 1973. Nathan Lerner never documented either a gift or any acts of abandonment. To the contrary, the only writing that Nathan preserved concerning his relationship with Henry Darger was his 1977 submission to the Hyde Park Art Center (his "Personal Reflection") stating that when he visited Darger in the nursing home, Darger sat in a corner alone, motionless, and completely remote. (*See* Joint Stipulations, Dkt # 153, ¶ 19.) Lerner acknowledged that when he visited Darger, Darger would barely glance at him and Lerner did not know if Darger even recognized him. *Id.*

Unlike Nathan's relatively contemporaneous reflection, Defendant crafted her recollection of the conversation for the first time (during her August, 2024 deposition), to cover both,

conflicting bases of her defense: gift *and* abandonment. (Joint Stipulations, Dkt # 153, ¶40)(emphasis added):

> And at one point Nathan asked Henry that what do you want, is there anything you want from your room because we need to clean up for the next tenant to rent out. Henry said I don't need anything. It's all yours. *I give everything in the room, it's yours. Throw them away for cleaning up purpose.*

Nothing in her testimony demonstrates that (a) Nathan mentioned artwork or (b) Darger discussed artwork. No inference can be drawn that Darger's 300 plus paintings and drawings were on the mind of either party to that alleged conversation. Moreover, Defendant's 2024 recollection conflicts not only with Nathan's written recollection, but also with her own writing, published in 2000 in the book entitled *Henry Darger, Disasters of War* (Joint Stipulations, ¶¶ 28-28). There, 27 years after Darger died, Defendant recalled that Darger never answered any question directly, but rather responded to any question put to him with a discussion of the weather. Prior to the lawsuit, the Defendant never made a record either that Nathan asked Darger a question in the nursing home or that Darger responded on point and directly. In sum, Defendant's earlier (if not contemporaneous) admissions cannot be squared with the inadmissible hearsay she presented during her deposition. (See Dkt # 151, pp. 8-10.)

### B.    Purported Conversation with David Berglund

David Berglund did not document his recollection of his purported conversation with Darger in the nursing home until 1999. According to his wife at the time (Betsy Fuchs), Berglund and Nathan were personal friends when they all lived in Lerner's rented rooms. (Dkt # 167, ¶ 64.) There is no evidence that Nathan ever asked Berglund to document any conversation regarding gifts or abandonment. Rather, Berglund's unsworn letter (See Dkt # 153-1, Exhibit S-17) was supplied to the Defendant, at her request, two years after she filed her own copyright applications claiming a transfer of such rights from Nathan.

Berglund apparently had his letter notarized by an attorney, but notably the letter did not contain the declaration/certification required by 28 U.S.C. §1746.[3]  As argued previously (Dkt # 151, p.10), the letter is both inadmissible hearsay and inherently not credible.  Moreover, the additional evidence submitted in the Estate's Rule 56.1(b)(3) Statement further amplifies the mendacity of Berglund's letter.  Berglund's then-wife, known as Betsy Fuchs at the time of her deposition, affirmatively testified (as did the Defendant) that that no one knew that there was valuable art in Darger's room *until after he died*.  Dkt # 167, ¶ 58.  Indeed, Berglund never discussed his purported conversation with his then wife, who knew nothing about any purported gift.  Id.

Admittedly, none of the still-living descendants of Darger can offer any affirmative evidence of what Darger did or did not say or do in 1972.  Indeed, none of his relatives knew anything about their relationship to Darger or his artwork until August, 2019.  Dkt # 167, ¶¶ & Exhibits K and L thereto.  However, the Estate's lack of affirmative evidence does not create a free path to judgment for the Defendant.

First, the burden is on the Defendant to demonstrate the facts supporting an *inter vivos* gift by clear and convincing evidence to survive summary judgment.  *Koerner v. Nielsen,* 2014 IL App (1st) 122980, ¶ 18 (party claiming an *inter vivos* gift has burden to prove, by clear and convincing evidence, donative intent, the donor's parting with exclusive dominion and control over the subject of the gift, and delivery to the donee).  *Shanahan v. Bowen,* 59 Ill. App. 3d 269, 273–74 (3rd Dist. 1978).

Second, Defendant, as the putative donee, has also failed to present evidence that Darger was mentally competent during the nursing home conversation.  All of the evidence presented

---

[3] "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct."

and adduced by both parties (and third-party witness Betsy Berglund Fuchs) strongly

demonstrate that Darger was *not* competent:

- Nathan Lerner's published admissions describe someone without the capacity to even recognize Lerner;

- The Defendant testified that Darger could not make his own arrangements to enter the nursing home and Nathan had to take care of all the financial details including Darger's social security;

- Both the Defendant and Ms. Fuchs noted that Darger did not regularly bathe or feed himself, and did not speak a word when invited to Christman dinner in 1971 – a year before he moved.

- Darger's diary entries between 1968 and 1971 (which the Defendant discovered and donated to the American Folk Art Museum) demonstrate Darger's physical and mental deterioration from both his failing handwriting and the long gaps in diary entries in 1971 and 1972 compared to Darger's prior habit of recording his daily experiences -- including his listing of how many times day he went to church, how many times he took communion or made confession whether or not he had tantrums or said "bad words."

- Darger's Death Certificate, signed by both a registered nurse and a medical doctor, listed the cause of death as "arteriosclerotic heart disease and senility." Exhibit 4 to Plaintiff's Rule 56.1 Statement.

The purported gift was made while Darger was alive, and he left no will. Joint Stipulations, Dkt # 153, ¶ 14. Even in cases involving an executed will -- where a gift may be *presumed* valid -- summary judgment *in favor of the putative donee* is inappropriate in the face of tangible evidence of decedent's mental and physical deterioration, medical records and graphic representations of the deceased's failing health and handwriting. *Matter of Est. of Clements,* 152 Ill. App. 3d 890, 895 (5th Dist.1987)(finding, after a full trial, that the putative donor lacked capacity to open a joint tenancy with his nephew). *See also In re Est. of Harn,* 2012 IL App (3d) 110826, ¶ 27 (reversing summary judgment in will contest in light of conflicting evidence that testator lacked sufficient mental capacity to transact ordinary business); *In re Est. of Roeseler,* 287 Ill. App. 3d 1003, 1014, 679 N.E.2d 393, 401 (1997)(reversing summary judgment on will

contest in light of evidence that the deceased decedent began to live in filth and squalor; rambled and repeated himself in conversation and was otherwise physically dependent on respondents for his basic needs).

Third, even if the Defendant could meet her evidentiary burdens necessary to defeat the Estate's Motion for Summary Judgment, the Estate is not required to dig up other witnesses who communicated with Darger in 1972 or 1973. To the contrary, the Estate is entitled to rely on circumstantial evidence which, as noted above, casts a grave pall over the gift/abandonment defenses which, *at a minimum,* create a question of fact which must be resolved at trial. *E.g., Jones v. Van Lanen,* 27 F.4th 1280, 1286 (7th Cir. 2022)(circumstantial evidence may be enough to survive summary judgment if that evidence could allow a jury to draw a reasonable inference in support of the non-moving party); *Boyd v. Wexler*, 275 F.3d 642, 645 (7th Cir. 2001)(circumstantial evidence can create an issue of credibility"); *LaBrec v. Walker*, 948 F.3d 836, 846 (7th Cir. 2020)(evidence that would "allow a jury to infer that [certain] circumstances" exist can be enough for a claim to proceed to trial).

The Defendant bears the same clear and convincing burden of proof regarding Darger's purported intention to abandon his personal property.[4] *See* Plaintiff's Summary Judgment Memorandum, p. 5. That burden is not met by Defendant's argument (on Dkt #155, pp. 22-23) that the term "left behind" in paragraph 3 of the Estate's Complaint constitutes a binding admission regarding legal abandonment. That colloquial expression is neither a judicial admission nor a term of art from which a legal conclusion may be drawn. *E.g., Ebert v. Gecker as Tr. of Est. of Emerald Casino, Inc.,* 609 F. Supp. 3d 645, 654–55 (N.D. Ill. 2022)(affirming bankruptcy court decision finding that Creditor's reference in its proof of claim to a "subscription agreement" was not a

---

[4] The Defendant made no claim, and offered no facts, suggesting that Darger abandoned his intellectual property.

judicial admission of stock ownership because the statement was not "deliberate, clear and unambiguous); *California N. R. Co. v. Gunderson Rail Servs., LLC,* 912 F. Supp. 2d 662, 669 (N.D. Ill. 2012)(allegation that a party failed to act cannot be construed as a judicial admission).

Indeed, the first known reference to Darger "leaving behind" his art (but clearly not his copyrights) comes from Nathan Lerner's "Personal Recollection" published in 1977 and again in 1995 to the effect that "Seemingly, he *left his life behind* in his room, for he died within a few months." See Joint Stipulations, Dkt # 153, ¶¶ 19 & 21. Defendant's argument that "left behind" must be construed as legally abandoned proves too much because it negates the Defendant's primary argument – that Darger made an intentional and unconditional gift. And if Nathan's recollection that Darger "left behind" his life's work was intended by Nathan to be construed as the affirmative "transfer" (as Nathan represented in his copyright applications), then it cannot be construed as abandonment.

Of course, whether its Nathan's personal recollection or the colloquial reference in the Complaint, the term "left behind" is not synonymous with legal abandonment either of intellectual or personal property. Legally, both a "gift" and an "abandonment" require affirmative acts and evidence of the donor/abandoner's intention to permanently part with his property. See Plaintiff's Memo in Support of Summary Judgment, p.5.

Defendant's reliance on *Paset v. Old Orchard Bank & Trust Company*, 62 Ill. App. 3d 534, 537 (1st Dist. 1978) does not compel this Court to conclude that Darger abandoned his personal property and that the Lerners were free to claim it as their own. *Paset* has nothing to do with "abandoned" property. *See* 62 Ill.App.3d at 537: "We are not concerned in this case with abandoned property where the owner, intending to relinquish all rights to his property, leaves it free to be appropriated by any other person." In *Paset*, someone (unknown) left $6,500 in cash in

a bank safety deposit vault. The Appellate Court was asked to construe the Illinois Estray statute (Ill.Rev.Stat.1975, ch. 50, par. 27 *et seq*.), noting that the purpose of that statute was to (a) encourage the return of mislaid property to the true owner, and (b) reward a finder for his honesty by making it possible for them, after the passage of the requisite time, to acquire legal title to the property they found. 62 Ill.App.3d at 537.

Pursuant to that statute, if the money was construed to be "lost" property, the appropriate disposition of the funds required the claimant to comply with the procedures under the Act. As argued more fully at pp. 18-21 *infra*, rather than supporting the Defendant's position, the discussion in *Paset* compels the Court to find that Darger did not "abandon" his property to his landlords under the common law or relevant Illinois statutes. Rather, the discussion of statutory requirements in the case demonstrates that the Lerners should have treated both his personal and intellectual property as "unclaimed property" under Illinois' version of the "Uniform Disposition Of Unclaimed Property Act." (Ill.Rev.Stat. ch. 141, par. 101 *et seq.*)

## II. None of the Estate's Claims Are Barred by the Applicable Statute of Limitations.

Defendant's Motion concedes that the statute of limitations does not apply to the Estate's copyright claims. (See Dkt # 154-1, p. 7: "all claims *but 3 years of copyright* claims are barred")(emphasis added). Accordingly, as a threshold matter, there is no basis for this Court to enter a final judgment (summary or otherwise) against the Estate and in favor of the Defendant. Moreover, as argued below, all of the Estate's claims have been timely filed.

In any event, as demonstrated in its Rule 56.1(b)(3) Statement, the Estate presents sufficient evidence to demonstrate that its copyright and false representation certainly occurred within three years of the filing of the Complaint and have been ongoing since the Complaint was filed. Moreover, the last act of Defendant's conversion of the Estate's property occurred within

10

the three years before the Complaint was filed. If this evidence were not sufficient on its own, the Estate has also adduced adequate evidence that the statute of limitations defenses should be denied under the discovery rule because the Estate took prompt action after learning that heirs and interested parties were related to Darger and learning that Darger had created valuable artwork. Finally, the Lerners' limited search for Darger's family and active discouragement anyone else research the family present sufficient facts to apply the equitable tolling/fraudulent concealment doctrines

A.      Applicable Statutes of Limitation

1.      Federal Claims.

Generally, a Plaintiff may assert a claim for copyright infringement (the Estate's Count II) within three years of the infringement. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 663 (2014). The same time frame applies to the Estate's request for declaratory relief in Count I of its Complaint. *Gaiman v. McFarlane*, 360 F.3d 644, 652 (7th Cir. 2004) (a party seeking a declaration of ownership of a copyright is subject to the same statute of limitations for an infringement claim). The Estate's false designation claims (analyzed pursuant to the law relating to the Lanham Act, see Dkt # 151, pp. 12-13) are governed by the state law statute most analogous to the claims. *Champion Laboratories, Inc. v. Central Illinois Manufacturing Co*. 157 F.Supp. 3d 759, 764 (7th Cir. 2016) (citing *Hot Wax, Inc. v. Turtle Wax, Inc*. 191 F.3d 813, 821 (7th Cir. 1999)). In Illinois, the analogous state statute is the Illinois Consumer Fraud and Deceptive Business Practices Act, which, like the copyright claims, are timely filed within three years. *Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, No. 12–9686, 2013 WL 6632741, at *3 (N.D.Ill. Dec. 16, 2013).

2.     State Common Law Claims.

The Estate's common law claims for conversion, common law unfair competition and unjust enrichment are all governed by the five-year, catch all provisions of 735 ILCS 5/13-205. *E.g., CitiMortgage, Inc. v. Parille*, 2016 IL App (2d) 150286, ¶ 40 (unjust enrichment);   *Addante v. Pompilio*, 303 Ill.App. 172, 175 (1ˢᵗ Dist. 1940)(five-year statute of limitations does not begin to run until the actual conversion takes place).

B.     Accrual Date/Law of Continuing Violations

As this Court noted in denying Defendant's motion to dismiss, under the "separate-accrual rule" which applies to the Copyright Act, the statute of limitations runs from each successive violation. *Est. of Darger v. Lerner,* 665 F. Supp. 3d 931, 938 (N.D. Ill. 2023).  More generally, the "continuing violation doctrine" holds in abeyance the accrual of a cause of action until the date upon which the final injury occurs. *Taylor v. Meirick,* 712 F.2d 1112, 1118 (7th Cir. 1983).[5]  The continuing violation doctrine is aimed at ensuring that illegal conduct is punished by preventing a defendant from invoking the earliest manifestation of its wrongdoing as a means of running out the limitations clock on a course of misconduct that persisted over time; the doctrine serves that end by treating the defendant's misconduct as a continuing wrong and deeming an action timely so long as the last act evidencing a defendant's violation falls within the limitations period.  *United States v. Spectrum Brands, Inc.,* 924 F.3d 337, 350 (7th Cir. 2019).  Indeed, the U.S. Supreme Court recently held that where, as here, a copyright plaintiff files suit within the three-year limitations period, the plaintiff may recover damages for infringements that occurred more than three years before the filing of the lawsuit.  *Warner Chappell Music, Inc. v. Nealy*, U.S. 366, 374, 144 S. Ct. 1135, 1140, 218 L. Ed. 2d 363 (2024)

---

[5] In *Champion Lab'ys, Inc. v. Cent. Illinois Mfg. Co.,* 157 F. Supp. 3d 759, 765 (N.D. Ill. 2016)(Judge Blakey reaffirmed Taylor's reasoning concerning copyright and trademark claims).

### C. Discovery Rule

The Illinois Supreme Court has applied the discovery rule generally "to ameliorate the potentially harsh effect of a mechanical application of the statute of limitations that would result in it expiring before a plaintiff even knows of his cause of action." *Henderson Square Condominium Ass'n v. LAB Townhomes, LLC, 2015 IL 118139, ¶ 52.* The discovery rule postpones the start of the limitations period until a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused. *Id.; See also Mosier v. Vill. of Holiday Hills,* 2019 IL App (2d) 180681, ¶ 23 (applying discovery rule to consumer fraud act cases); *Rodgers v. Vermilion Cnty., Illinois,* No. 23-CV-2017, 2023 WL 12085877, at *13 (C.D. Ill. Sept. 15, 2023)(predicting that Illinois Supreme Court would apply discovery rule to conversion of personal property).

### D. Equitable Tolling/Fraudulent Concealment.

Any applicable statute of limitations is tolled in the face of evidence that the defendant acted (and failed to act) intending to conceal claims from the plaintiff. *E.g., Palm as Co-trustee of Diane L. Sergi Tr., Dated Mar. 4, 2001 v. Sergi,* 2022 IL App (2d) 210057, ¶ 67 (silence by one acting as in a trust or fiduciary capacity triggers application of fraudulent concealment doctrine).[6] *See also United Nat. Recs., Inc. v. MCA, Inc.,* 609 F. Supp. 33, 35 (N.D. Ill. 1984)(denying defendant's motion for summary judgment pursuant to equitable tolling and fraudulent concealment doctrine).

Defendant's reliance, at Dkt # 154-1, pp. 7 & 28, upon *McElroy v. Force*, 38 Ill. 2d 528, 532–33 (1967), *Bishop v. Ellsworth*, 91 Ill. App. 2d 386, 391-92 (3d Dist. 1968) and *Bakalar v.*

---

[6] The Estate's Memorandum in Support Summary Judgment presents sufficient facts for the Court to find that the Lerners accepted roles as Darger's fiduciary prior to the time he moved to the nursing home. (Dkt # 151, pp. 6-8).

*Vavra*, 500 F. App'x 6, 8 (2d Cir. 2012) (courts do not "reset the clock for each successive generation") is unavailing. *Bakalar* is an unpublished opinion upholding the District Court's finding, *after trial,* that the artwork in question (a 1917 drawing by Egon Schiele) was not stolen by the Nazis. The District Court also found that laches could not save the Plaintiff's claim in the face of evidence that the sister-in-law of the original owner sold the work to a third-party in good faith in 1956. The case does not stand for the Defendant's proposition that the discovery rule only applies to first-generation heirs. *Bishop* (like *Paset*, *supra*) applied the Illinois Estray statute and sustained the claim of a property owner against persons who found money buried on his property. In doing so, it applied the presumption that a property owner has superior rights to a finder. That finding is adverse to the arguments made by the Defendant here. *McElroy* has nothing to do with laches or the purported, presumed knowledge of prior generations. The Court there merely affirmed a judgment against the estate of a motorist which could not rebut the presumption that the deceased was at fault for the plaintiff's injuries.

### III.     Defendant Has No Evidence to Support its Laches Affirmative Defense.

Laches is an equitable defense available only where the defendant can establish both that (a) the plaintiff lacked due diligence and (b) the plaintiff's lassitude caused the prejudice which the defendant claims it suffered. *E.g., W. Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co.,* 794 F.3d 666, 678 (7th Cir. 2015). Defendant concedes that laches does not apply to the copyright claims. [7] Moreover, Defendant's Rule 56.1 Statement fails to adduce any fact concerning her purported "prejudice" and her memorandum (Dkt # 155, p. 10) states baldly that "Prejudice is obvious." (What is obvious and uncontested is that the Defendant has profited richly from selling Darger artwork, as recently as November, 2019 – within three years of the filing of the Estate's

---

[7] See Def. Memo, Dkt # 154-1 at p. 10 ("Laches does not apply to the copyright claim. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 667 (2014)."

Complaint. The failure to establish any prejudice the Defendant has suffered is, as a threshold matter, fatal to the affirmative defense.

Moreover, on the first prong of analysis (undue delay), the Estate's Rule 56.1(b)(3) statement ably demonstrates that the Estate acted with due diligence upon the discovery of its claims. Defendant's suggestion that articles published in the local papers put people named Klein, Sadowski, Cloghessy or Backe on notice of their potential inheritance is beyond unreasonable speculation.

Defendant's suggestion that this Court may grant her summary judgment because the Estate has not yet located any potential relatives of Darger's *mother* is not properly before this Court. The Probate Court authorized the opening of the Estate and will administer the proceeds of these proceedings. The Letters of Office issued (Joint Stipulations, Ex. S-1) specifically state that the Supervised Administrator "is authorized to take possession of and collect the estate of the decedent and to all acts required by law." The Order of the Probate Court cannot be attacked in a collateral proceeding. *Wetmore v. Henry*, 259 Ill. 80 (1913). The Probate Court is vested with significant discretion in appointing the administrator or executor of an estate, even if one or more petitioners with equal rights seek appointment as representative on an estate. *Estate of Roselli*, 70 Ill.App.3d 116 (1st Dist. 1979), citing Dennis v. Dennis, 323 Ill.App. 328 (1944). The Probate Court is similarly vested with significant discretion in determining the heirship of any decedent at any time during the administration of the estate (755 ILCS 5/5-3(a)) and the later discovery of an unnotified heir does not cause the letters of office issued to the Administrator to be ineffective against other persons, including creditors (755 ILCS 5/9-10).

IV.     **The Estate Has Adduced Sufficient Evidence Concerning All Elements
of Its Claims, Including Defendant's Intentional Misconduct.**

The Estate's Motion for Summary Judgment and its Rule 56.1 Statement provide

uncontested facts concerning all pleading elements of the Estate's copyright and false

designation claims (*i.e.,* Counts I, II, IV, V and VI).  The only claims about which the Estate has

not sought summary judgment are Count III (for equitable easement), Count VII (unjust

enrichment) and Count IX (conversion).  Although Defendant has not specifically moved for

judgment on those claims, the Estate's Rule 56.1 Statements demonstrate evidence on all the

pleading elements of those claims.

A.     Equitable Easement

Plaintiff's Count III seeks the imposition of equitable remedies sufficient for it to inspect

and, if necessary, copy all Darger materials which the Defendant has retained and to provide

further declaratory and equitable relief necessary to effectuate the Estate's dominion over

copyrighted material.

The Estate's motion concerning Counts I and II demonstrate its entitlement to relief for

copyright infringement.  Ms. Lerner has not fully accounted for the location of all copyright-

related materials, but she has admitted that she has "lent" two complete sets of the transparencies

over all of Darger's physical work to the Chicago museum known as "Intuit" without any

documentation of any sale or gift. Dkt # 150-1 ¶29.  Moreover, documents produced by Intuit

Art Museum demonstrate that Ms. Lerner gave six Darger works to Nathan's son between 2003

and 2007 (Dkt # 167-1 Exhibit G).

B.     Unjust Enrichment

To state a cause of action for unjust enrichment, the plaintiff must establish: (1) the

defendant has unjustly retained a benefit to the plaintiff's detriment, and (2) the defendant's

retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *E.g., HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, (1989). There can be no question that Defendant has been enriched by (a) the sale of Darger's works (b) the tax deductions she has had available as a result of her "contributions" valued at more than $7,000,000 and (c) by licensing fees associated with the exploitation of his copyrights which continue to date.

> C. Conversion.

Illinois recognizes the common law claim for conversion of both tangible and intangible property. *Stathis v. Geldermann, Inc.,* 295 Ill. App. 3d 844, 856 (1st Dist. 1998). The elements of the claim are: (1) plaintiff's ownership in the property; (2) the right to immediate, absolute, and unconditional possession of the property; and (3) defendant's unauthorized and wrongful assumption of control, dominion, or ownership over the property. *Id.* In most circumstances, the plaintiff must also demonstrate a demand for return of the property; however, the demand requirement is not necessary where, as here, the demand would be futile because the defendant sold, disposed of, or fundamentally changed the property at issue. *Stevens v. Interactive Fin. Advisors, Inc.,* 830 F.3d 735, 742 (7th Cir. 2016). The Estate made demand for return of Darger property on September 20, 2020. Complaint, Dkt #1. Ex.6. Defendant claims she has no Darger artwork.

Defendant's argument that the Estate wishes to "turn landlord-tenant law upside down" (Dkt #154-1, p. 29) is contrary to controlling law and must be rejected. Nothing in Illinois law concerning the relationship between a landlord and a tenant entitled the Lerners to claim Darger's property as their own. In 1972, when Darger moved into the nursing home, the only property that a landlord could attach related to farm crops. *Cottrell v. Gerson*, 296 Ill.App. 412,

422 (4th Dist. 1938), *aff'd,* 371 Ill. 174, 20 N.E.2d 74 (1939)(at common law a landlord had no lien upon any property of his tenant as security for the rent or for anything else). The landlord may have had the right to bring a "distress" proceeding in Court for unpaid rent, but that distress claim was limited to the amount of unpaid rent (about which there is no evidence), and would not extend to millions of dollars' worth of artwork and related intellectual property. There is no evidence that the Lerners ever brought such a claim and, if they did not make such a claim, the Lerners had no right to attach or claim Darger's property. *Faubel v. Michigan Boulevard Bldg. Co.,* 278 Ill.App.159 (1st Dist. 1934)(deceased executrix entitled to compensation for landlord's conversion of deceased's personal property). Indeed, even if they did bring such a claim, no lien would attach until the Lerners filed a distress warrant and inventory with the Court. *Ivanhoe Shoppes, LLC v. Bauspies,* 2021 IL App (2d) 200582, ¶ 21 (2021). There is no evidence that they did anything of the sort.

Moreover, if the Lerners had any legal claim as a result of their roles as landlords, those rights, if any, would spring from the "Uniform Disposition Of Unclaimed Property Act." (Ill.Rev.Stat. ch. 141, par. 101 *et seq.*) ("the Act")(a copy of the Act operative as of 1975 is supplied with the Estate's Rule 56.1(b)(3) statement as Exhibit M thereto.). The Act imposed affirmative duties on the Lerners to treat Darger's property (and, since Darger died within a matter of months, the Estate's property) as bailees until and unless they complied with various provision of the Act. The Lerners had affirmative duties to preserve Darger's personal and intellectual property and, as discussed below, to deliver such property to the State's Director of the Department of Financial Institutions. If they complied with the Act while Darger was alive, they could make a formal claim for the property as their own (which they did not).

There is no dispute that, in 1972, Nathan and Kiyoko Lerner were Darger's "landlords." Complaint & Answer, ¶ 4. As landlords, the Lerners were subject to the Act as a "business association" (see Section 1(b) of the Act)[8] and "holders" of property (see Section 1(d) of the Act).[9] Darger was an "owner" of his tangible and intangible property under the Act (Section 1(f)).[10] Section 7 of the Act provided that all any intangible personal property be treated as "abandoned property" unless the owner provided a writing to the holders concerning the property. There is no such writing.

Furthermore, in 1975, the Illinois Legislature enacted Section 2(a) providing that all *physical* property (and earnings related thereto) which had gone unclaimed for a period of 7 years should also be presumed abandoned.

Section 111 of the Act required the "holder" of abandoned property to report such property to the Director of the Illinois Department of Financial Institutions by November 1 of the year after the property qualified as abandoned property. Once the holder made such a report, the Illinois Director of the Department of Financial Institutions was required to publish public notice concerning all abandoned property identified by "holders." Pursuant to Section 113 of the Act, The "holders" were then required to turn over all such abandoned property within 20 days after the Director published his report.

Section 119 of the Act required persons claiming an interest in abandoned property were required to file a formal claim with the Director. A holder of abandoned property who did not report its possession of abandoned property was subject to civil and criminal prosecution under Section 125 of the Act.

---

[8] "[A]ny association for business purposes of 2 or more individuals."
[9] "[A]ny person in possession of property subject to this Act."
[10] "[A]ny person having a legal or equitable interest in property subject to this Act")

19

There is no factual dispute that (a) Darger's intangible rights were "abandoned property" as defined by the Act (rather than the Defendant) not later than the day the Defendants discovered the physical materials; (b) the Lerners made no effort to establish a probate estate to address Darger's physical and intangible property; (c) the Darger's tangible property was similarly deemed "abandoned property" under the Act not later than 1980 (*i.e.,* seven years after Darger died) while the Lerners held the property in their possession; (d) the Lerners never filed any reports concerning any abandoned property (intangible or tangible); (e) the Lerners never turned over any property to the state and (f) the Lerners never filed a claim to be adjudicated as a rightful owner of the abandoned property.

As an additional point, after Darger died, the Lerners could have opened up a Probate Estate to deal with Darger's personal and intellectual property (755 ILCS 9/7) but never did. Had they done so, the Probate Court would have required notice to any known heirs and the publication of notice to unknown heirs. 755 ILCS 5/9-5. Authority to act for the Estate of a decedent can be granted only by the Probate Court. *Grace v. Seibert,* 235 Ill. 190, 192 (1908). A person who, without the authority of the Probate Court intermeddles with the decedent's property bears has all of the liabilities but none of the rights of an appointed executor or personal representative, meaning that he or she can be treated as a quasi executor "only for the purpose of being sued or made liable for the assets with which he has intermeddled." *Id.*

Accordingly, the Lerners' annexation of Darger's property was unlawful and constituted *per se* conversion of his physical property which they later sold to third parties for millions of dollars and "donated" additional property valued in excess of $7,000,000 for which they sought charitable deductions. That conduct is sufficient to demonstrate the fact that the Defendant has been acting in bad faith for more than 40 years.

There is much more evidence concerning the Defendant's intentional, tortious conduct sufficient for this Court to enter a finding of willful misconduct.  Plainly, Defendant has been on notice since September, 2020 of the Estate's claims, but has willfully continued to license his copyrights.  *E.g., Wildlife Exp. Corp. v. Carol Wright Sales, Inc.,* 18 F.3d 502, 511–12 (7th Cir. 1994)(a finding of willfulness is justified "if the infringer knows that its conduct is an infringement or if the infringer has acted in reckless disregard of the copyright owner's right;" the claimed innocence of one who chooses not to inquire justifies finding of willfulness.); *Chi– Boy Music v. Charlie Club, Inc.,* 930 F.2d 1224, 1227 (7th Cir.1991)(a letter informing the defendant of possible infringement clearly provides notice.)  The same standard is applied to trademark violations.  *Ent. One UK Ltd. v. 2012Shiliang*, 384 F. Supp. 3d 941, 952 (N.D. Ill. 2019)(A court may attribute willful infringement to a defendant's actions when the defendant "had knowledge that [its] conduct constituted infringement or where [it] showed a reckless disregard for the owner's rights.").  Illinois common law regarding conversion extends the standard to acts of gross negligence. *Fogt v. 1-800-Pack-Rat, LLC,* 2017 IL App (1st) 150383, ¶ 81.

## <u>CONCLUSION</u>

For the foregoing reasons and those advanced in the Estate's Motion for Summary Judgment on Liability, the Estate of Henry Joseph Darger respectfully urges this Court to deny Defendant's Motion for Summary Judgment, to enter summary judgment on liability against Defendant Kiyoko Lerner on Counts I, II, IV, V, VI, and VIII of Plaintiff's Complaint, to enter a declaratory judgment that the Estate is the true and proper owner of the copyrights relating to

Henry Darger's work, to dismiss Defendant's Abandonment Affirmative Defense with prejudice and to set the matter for trial (a) liability and damages on Counts III (for equitable easement), Count VII (for unjust enrichment) and Count IX (for conversion), and (b) Plaintiff's damages on Counts II, IV, V, VI.

Respectfully submitted,

ESTATE OF HENRY JOSEPH DARGER, Jr.

By:_____ /s/ *Alan J. Mandel*_____

Alan J. Mandel
alan@mandelaw.net
ALAN J. MANDEL, LTD.
7520 Skokie Boulevard
Skokie, IL 60077
312-282-8459

Marcus S. Harris
mharris@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 E. Wacker Drive, 28th Floor
Chicago, Illinois 60601
(312) 840-4320

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 24, 2025, he caused the foregoing

Memorandum in Opposition to Defendant's Motion for Summary Judgment to be electronically

filed with the Court using CM/ECF which will send notification of such filing to all counsel of

record.


                                        /s/ *Alan J. Mandel*